**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARCELLUS A. JONES, | No. 4:18-CV-02353 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MICHAEL WENEROWICZ, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**AUGUST 19, 2022**

*Pro se* Plaintiff Marcellus A. Jones ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Camp Hill ("SCI-Camp Hill") and was incarcerated in the State Correctional Institution-Frackville ("SCI-Frackville") and the State Correctional Institution-Greene ("SCI-Greene") during the period of time relevant to this case, brought this case alleging civil rights violations by Defendants employed at SCI-Frackville. Defendants have moved for summary judgment. I will grant the motion in part and deny it in part.

## I.   BACKGROUND

Plaintiff initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on December 7, 2018.[1] Plaintiff additionally moved for leave to

---

[1]   Doc. 1.

proceed *in forma pauperis*.[2]  United States Magistrate Judge Martin C. Carlson

granted the motion for leave to proceed *in forma pauperis* on January 17, 2019.[3]

On May 15, 2019, I dismissed the claims against several defendants without

prejudice and granted Plaintiff leave to file an amended complaint.[4]  Plaintiff

timely amended his complaint on August 22, 2019.[5]  According to the allegations

in the amended complaint, Plaintiff was enrolled in SCI-Frackville's Behavioral

Management Program in March 2018 when he was temporarily transferred to SCI-

Greene so that he could attend a court hearing in a habeas corpus case he had

previously filed.[6]  Upon Plaintiff's return to SCI-Frackville, Defendants White,

Sorber, Albert, O'Kane, and Boyce conducted an administrative hearing to

determine whether Plaintiff was eligible to graduate from the Behavioral

Management Program.[7]  Defendants purportedly informed Plaintiff that due to his

temporary absence from the program while he was at SCI-Greene, he would not be

allowed to graduate from the Behavioral Management Program, despite the fact

that he met all the other eligibility criteria for graduation.[8]  Plaintiff, perceiving this

decision as a punishment for having attended court in the habeas corpus

proceeding, decided not to attend the next hearing in the proceeding, which

---

[2]   Doc. 3.
[3]   Doc. 9.
[4]   Doc. 19.
[5]   Doc. 22.
[6]   *Id.* at 5.
[7]   *Id.*
[8]   *Id.*

2

resulted in the habeas corpus petition being denied.[9]  Plaintiff alleges that the

decision to deny him graduation from the Behavioral Management Program arose

from a conspiracy by the Defendants to violate Plaintiff's constitutional rights as

retaliation for him having filed the habeas corpus petition.[10]

The amended complaint further alleges that on March 17, 2018, prison staff

confiscated a newspaper belonging to Plaintiff.[11]  Prison staff subsequently notified

him that the newspaper would be returned.[12]  Plaintiff then filed several complaints

and grievances to have the newspaper returned, but it never was.[13]  Plaintiff

purportedly asked Defendant Brittain whether the newspaper would be returned,

and Brittain allegedly stated, "if you keep crying[,] complaining[,] bitching[,] and

moaning about being abused we'll never give anything."[14]  Plaintiff also allegedly

asked Defendants Newberry, Dowd, and Albert about the missing newspaper, but

none of the Defendants returned the newspaper.[15]  Plaintiff alleges that the

confiscation and subsequent failure to return the newspaper violated his rights

under the First Amendment, violated his right to due process under the Fourteenth

Amendment, and constituted conversion under Pennsylvania law.[16]

---

[9]   *Id.*
[10]  *Id.* at 6.
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*
[14]  *Id.* at 7.
[15]  *Id.*
[16]  *Id.*

3

The amended complaint alleges that on April 4, 2018, Plaintiff spoke with Defendants Wenerowicz, Hammond, Brittain, White and Sorber outside of his cell.[17]  The Defendants, who all purportedly held supervisory roles with SCI-Frackville or the Department of Corrections, were at Plaintiff's cell while they were touring the facility.[18]  Plaintiff allegedly informed the defendants that prison staff were abusing him and retaliating against him.[19]  As a result of Plaintiff informing these defendants of the abuse and retaliation that he was purportedly suffering, prison staff allegedly targeted Plaintiff for "retaliatory attacks" on April 20, 2018, June 9, 2018, June 16, 2018, June 25, 2018, July 1, 2018, July 4, 2018, July 6, 2018, July 11, 2018, October 4, 2018, and October 9, 2018.[20]  Plaintiff alleges that this retaliation violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments.[21]

Defendants McCord, Beach, and other unnamed individuals allegedly entered Plaintiff's cell on March 27, 2018 and stole some of Plaintiff's personal property.[22]  Plaintiff's personal property was then allegedly given to white inmates "as payment."[23]  This action purportedly followed from a pattern of action by prison staff of stealing personal property from non-white inmates and giving the

---

[17]  *Id.*
[18]  *Id.*
[19]  *Id.*
[20]  *Id.* at 8.
[21]  *Id.*
[22]  *Id.* at 9.
[23]  *Id.*

4

property to white inmates "as payment."[24]  Plaintiff purportedly informed prison staff that his personal property had been taken, which allegedly resulted in Defendant McCord confiscating legal mail that Plaintiff was trying to send to the United States Court of Appeals for the Third Circuit as part of then-extant litigation.[25]  Defendant McCord allegedly destroyed or stole the confiscated legal materials with the approval of Defendants Wenerowicz, Hammond, Brittain, White, Sorber, and Albert.[26]  The fact that the legal documents were never sent to the Third Circuit led to the Third Circuit ruling against Plaintiff.[27]  Plaintiff alleges that if the Third Circuit had received the documents, the court would have instead ruled in his favor.[28]

The amended complaint alleges that on April 20, 2018, an inmate hired by Defendants Hoffner and Thompson went to Plaintiff's cell and threatened Plaintiff with violence.[29]  The inmate purportedly banged and kicked on the outside of Plaintiff's cell, slammed his meal tray against the cell, and shouted that he would "kill [Plaintiff] for being such a fucking snitch" and that Defendants would "fuck [Plaintiff] up for ratting [them] out."[30]  Prison staff allegedly did nothing to stop

---

[24]  *Id.*
[25]  *Id.*
[26]  *Id.* at 10.
[27]  *Id.*
[28]  *Id.*
[29]  *Id.* at 11.
[30]  *Id.*

the inmate.[31]  The amended complaint alleges that video footage from April 20, 2018 shows Defendant Hoffner delivering payment to the hired inmate in the form of tobacco and other items.[32]  The amended complaint alleges that the same hired inmate and Defendant Boyce fabricated a disciplinary report against Plaintiff on July 1, 2018.[33]  Further, on July 2, 2018 the hired inmate and Defendant Hoffner purportedly spoke to each other outside of Plaintiff's cell, pointed at the cell, and said "we need to get that n[---] snitch" and "don't worry he'll pay dearly for being such a cry baby bitch before the weeks out."[34]

Defendants allegedly allowed the same inmate to assault Plaintiff on July 4, 2018 by spraying Plaintiff in the face with disinfectant.[35]  Defendants then purportedly fabricated a misconduct report against Plaintiff for assault arising from the incident.[36]  Defendants Moser, Dowd, and Hoffner allegedly denied Plaintiff a shower after he provided his account of the incident during an interview with prison staff.[37]  The amended complaint alleges that prison surveillance footage from August 19, 2018 shows Defendant Hoffner and the inmate who was allegedly hired by Defendants engaged in "sex acts" in a secluded, isolated area of the

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at 12.
[36] *Id.*
[37] *Id.*

prison.[38]  The amended complaint also alleges that video evidence from September 30, 2018 shows Hoffner stating, "now it's time to get him," in reference to Plaintiff and that mere hours later Plaintiff was targeted for a cell inspection by Hoffner.[39]

The amended complaint alleges that on October 1, 2018, Defendant Boyce conferred with the inmate allegedly hired by Defendants in order to plot against Plaintiff, after which Boyce "zeroed in" on Plaintiff's cell, threatened Plaintiff, and issued a false misconduct charge against Plaintiff.[40]  The next day, October 2, 2018, Defendants Hoffner and Palerino allegedly entered Plaintiff's cell and kicked and punched him while shouting "yeah pussy now you have a reason to snitch" and "this ass whooping is a reason for you to file another lawsuit."[41]  Defendant Eidem allegedly told Plaintiff shortly after the assault that the attacks by prison staff would get worse if Plaintiff continued to file complaints to prison administrators.[42] Plaintiff was also allegedly denied medical care following the assault and was told by Defendants Eidem and Kathy that he would not be given medical care unless he stopped filing complaints.[43]

The amended complaint raises ten claims for relief.  First, the amended complaint alleges that Defendants violated Plaintiff's right to equal protection.[44]

---

[38]  *Id.*
[39]  *Id.* at 13.
[40]  *Id.*
[41]  *Id.*
[42]  *Id.*
[43]  *Id.*
[44]  *Id.* at 14.

Second, the amended complaint alleges that Defendants engaged in a conspiracy to violate Plaintiff's civil rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.[45]  Third, the amended complaint alleges that Defendants failed to intervene in the violation of Plaintiff's civil rights.[46]  Fourth, the amended complaint alleges that Defendants retaliated against Plaintiff in violation of the First Amendment.[47]  Fifth, the amended complaint alleges that Defendants committed cruel and unusual punishment in violation of the Eighth Amendment.[48] Sixth, the amended complaint alleges that Defendants violated Plaintiff's right of access to the courts under the First Amendment.[49]  Seventh, the amended complaint alleges that Defendants violated Plaintiff's right to due process under the Fourteenth Amendment.[50]  Eighth, the amended complaint alleges that Defendants committed defamation under Pennsylvania law.[51]  Ninth, the amended complaint alleges that Defendants committed "intentional and conversion torts" under Pennsylvania law.[52]  Finally, the amended complaint alleges that Defendants committed "peculiar risk and superior knowledge torts" under Pennsylvania law.[53] The amended complaint seeks damages, declaratory relief, and injunctive relief.[54]

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 15.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.* at 16.

Defendants answered the amended complaint on November 12, 2019,[55] and

subsequently moved for summary judgment on June 25, 2020 following the close

of fact discovery.[56]

On July 1, 2020, Defendants moved for reconsideration of the Order

granting Plaintiff's request for leave to proceed *in forma pauperis*, arguing that the

Supreme Court's decision in *Lomax v. Ortiz-Marquez*,[57] constituted an intervening

change in controlling law that prevented Plaintiff from proceeding *in forma*

*pauperis* given that three previously dismissed cases that he had filed now

qualified as strikes under 28 U.S.C. § 1915(g).[58]  I granted the motion for

reconsideration on July 29, 2020 and revoked Plaintiff's permission to proceed *in*

*forma pauperis*.[59]  Plaintiff moved for reconsideration on August 14, 2020, arguing

that one of the three cases that the court had determined was a strike, *Jones v.*

*Wetzel*,[60] should not qualify as a strike under § 1915(g).[61]  I denied the motion for

reconsideration on December 29, 2020, dismissed Defendants' motion for

summary judgment as moot, and directed the Clerk of Court to close the case.[62]

Plaintiff appealed.[63]

---

[55]  Doc. 31.
[56]  Doc. 61.
[57]  590 U.S ___, 140 S. Ct. 1721 (2020).
[58]  Doc. 63.
[59]  Doc. 70.
[60]  No. 2:15-CV-00130 (E.D. Pa. filed Jan. 29, 2015).
[61]  Doc. 71.
[62]  Docs. 81-82.
[63]  Doc. 83.

On appeal, the United States Court of Appeals for the Third Circuit determined that *Jones v. Wetzel* does not qualify as a strike because it was not explicitly dismissed for failure to state a claim upon which relief could be granted.[64]  The court accordingly vacated my Orders revoking Plaintiff's *in forma pauperis* status and denying Plaintiff's motion for reconsideration and remanded the case for further proceedings with instructions to grant Plaintiff's application for leave to proceed *in forma pauperis*.[65]

In accordance with the Third Circuit's instructions, I reopened the case, reinstated Plaintiff's *in forma pauperis* status, and granted Defendants leave to file a renewed motion for summary judgment.[66]  Defendants timely moved for summary judgment on January 31, 2022.[67]  Briefing on the motion is complete and it is ripe for disposition.[68]  Plaintiff has additionally moved for an order denying Defendants' motion for summary judgment.[69]  That motion is also ripe.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[70]  "Facts that could alter the outcome are 'material facts,' and

---

[64]   Doc. 85.
[65]   *Id.*
[66]   Doc. 86.
[67]   Doc. 90.
[68]   *See* Docs. 92, 96, 98.
[69]   Doc. 97.
[70]   Fed. R. Civ. P. 56(a).

disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[71]  "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[72]  "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[73]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[74]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on a lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[75]  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[76]  "The judge's inquiry, therefore unavoidably asks . . .

---

[71]  *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[72]  *Clark*, 9 F.3d at 326.

[73]  *Id.*

[74]  *Anderson*, 477 U.S. at 252.

[75]  *Id.*

[76]  *Id.*

'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."[77]  The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[78]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[79]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[80]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i)

---

[77]  *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[78]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[79]  *Id.*
[80]  *Anderson*, 477 U.S. at 250.

"citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[81]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant."[82]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[83]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[84]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[85]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

---

[81]  Fed. R. Civ. P. 56(c)(1).
[82]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[83]  Fed. R. Civ. P. 56(e)(2).
[84]  Fed. R. Civ. P. 56(c)(3).
[85]  *Anderson*, 477 U.S. at 249.

for that party."[86]  "If the evidence is merely colorable . . . or is not significantly

probative, summary judgment may be granted."[87]

## III.   MATERIAL FACTS

Local Rule 56.1 requires a party moving for summary judgment to submit "a

separate, short and concise statement of the material facts, in numbered

paragraphs, as to which the moving party contends there is no genuine issue to be

tried."[88]  The non-movant must file a statement in response to the movant's

statement that responds to the numbered paragraphs in the movant's statement and

sets forth which paragraphs present a genuine issue of material fact.[89]  Any facts

that are set forth in the movant's statement that are not contradicted by the non-

movant's statement are "deemed to be admitted."[90]  In this case, Defendants filed a

statement of material facts as required by Local Rule 56.1, and Plaintiff filed a

statement of disputed facts as part of his motion for an order denying summary

judgment that responds to the substance of Defendants' statement.[91]

Before turning to the material facts, I must address an evidentiary issue that

has arisen between the parties.  Defendants' statement of material facts relies

heavily on Plaintiff's testimony during his February 4, 2020 deposition.[92]  Plaintiff

---

[86]   *Id.*
[87]   *Id.* at 249-50 (internal citations omitted).
[88]   M.D. Pa. L.R. 56.1.
[89]   *Id.*
[90]   *Id.*
[91]   *See* Docs. 91, 97.
[92]   *See* Doc. 91.

notes, however, that Defendants did not seek leave of the court before conducting the deposition.[93]  Plaintiff therefore seeks to have the deposition stricken from the summary judgment record and not considered in determining whether a genuine issue of material fact exists.[94]

Under Federal Rule of Civil Procedure 30, a party "must obtain leave of court" before conducting a deposition if the deponent "is confined in prison."[95] There is no exception to this rule when the deponent is a party to the lawsuit.[96] Neither the Supreme Court nor the Third Circuit has addressed whether testimony from a deposition that was conducted without the leave of court required by Rule 30 may subsequently be used as evidence in the case.  Case law from this district and other circuits, however, indicates that Rule 30 does not create a *per se* rule requiring suppression of the deposition.[97]  In the absence of such a *per se* rule, courts have generally looked to whether the deponent suffered any prejudice or injury as a result of the deposing party not obtaining leave of court.[98]

---

[93] *See* Doc. 97 at 3.

[94] *See id.*

[95] Fed. R. Civ. P. 30(a)(2)(B).

[96] *Ashby v. McKenna*, 331 F.3d 1148, 1150 (10th Cir. 2003); *Miller v. Bluff*, 131 F.R.D. 698, 700 (M.D. Pa. 1990).

[97] *See Kendrick v. Schnorbus*, 655 F.2d 727, 729 (6th Cir. 1981); *Miller*, 131 F.R.D. at 700; *see also*, *e.g.*, *Vogelsberg v. Kim*, No. 17-CV-596, 2021 WL 1535576, at *1 (W.D. Wis. Apr. 19, 2021); *Scroggins v. United States*, No. 4:19-CV-163, 2020 WL 1862556, at *2 n.2 (N.D. Tex. Apr. 13, 2020); *Osborne v. Vasquez*, No. 3:12-CV-213, 2013 WL 995070, at *5 (D. Conn. Mar. 11, 2013); *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, No. 10-CV-154, 2012 WL 1161125, at *3 (D.N.H. Apr. 6, 2012); *Subil v. U.S. Marshal*, No. 2:04-CV-257, 2008 WL 4372404, at *1 (N.D. Ind. Sept. 19, 2008).

[98] *See Kendrick*, 655 F.2d at 729.

In this case, I will strike Plaintiff's deposition from the summary judgment record and will not consider testimony from the deposition in determining whether a genuine issue of material fact exists.  Plaintiff objected to Defendants deposing him almost immediately after the deposition occurred through the filing of a document titled "Judicial Notice Improper Deposition Taken on Feb. 4, 2020."[99] Plaintiff noted that he had not received any advance notification from opposing counsel or the Court that a deposition would be occurring.[100]  Plaintiff thus averred that he was put at a disadvantage throughout the deposition because he did not have the opportunity to review relevant evidence prior to the deposition.[101] Defendants never responded to this document nor refuted Plaintiff's contention that he was not given advance notice of the deposition.  Thus, from the record before me, it appears that Plaintiff has suffered actual prejudice as a result of Defendants' failure to obtain court leave as required by Rule 30.  Moreover, I have held Plaintiff responsible for his failure to comply with procedural rules multiple times in this litigation.[102]  It would be incongruous to strictly enforce procedural rules against Plaintiff without doing the same with respect to Defendants, especially considering Plaintiff's status as a *pro se* litigant.  Accordingly, I will not

---

[99]  *See* Doc. 39.
[100]  *See id.*
[101]  *Id.*
[102]  *See*, *e.g.*, Doc. 78 (deeming plaintiff's motion withdrawn for his failure to file a supporting brief as required by Local Rule 7.5); Doc. 89 (same).

consider any testimony from Plaintiff's deposition in resolving the instant motion for summary judgment.

In the absence of evidence taken from Plaintiff's deposition, Defendants' statement provides scant facts that Defendants assert are undisputed. Defendants assert that contrary to Plaintiff's allegations, video evidence shows Plaintiff attacking the other inmate on July 4, 2018 and does not show Plaintiff being assaulted.[103] Defendants also assert that documentary evidence related to the July 4, 2018 incident shows that the other inmate was attacked by Plaintiff.[104] As for the alleged assault by Defendants Hoffner and Palerino on October 2, 2018, Defendants assert that Plaintiff covered the relevant camera during the incident, meaning that video footage does not exist.[105] Defendants also note that a nurse in the prison, Kathleen Shorts, "confirmed that the Plaintiff was not attacked as he alleged," that Plaintiff did not report the incident until October 3, 2018, and that another inmate in the prison stated that Plaintiff injured himself to fabricate a claim against Hoffner and Palerino.[106] Finally, Defendants assert that Plaintiff's misconduct history indicates why he did not progress in the Behavioral Management Program.[107] Plaintiff disputes Defendants' contentions as to what the

---

[103] Doc. 91 ¶¶ 17, 28, 33, 50, 55.

[104] *Id.* ¶¶ 55-56.

[105] *Id.* ¶ 57.

[106] *Id.* ¶¶ 57-58.

[107] *Id.* ¶ 59. Defendants also include several factual assertions relating to Plaintiff's purported failure to exhaust administrative remedies. *See id.* ¶¶ 60-63. These documents will be disregarded because, as noted *infra*, Defendants did not raise the issue of failure to exhaust in

video evidence depicts.[108]  Plaintiff also disputes Defendants' contentions

regarding documentary evidence about the alleged assaults.[109]  Finally, Plaintiff

asserts that Department of Corrections policy voided his misconduct history upon

his entrance into the Behavioral Management Unit.[110]  I address this evidence, and

whether there are any genuine issues of material fact, in my analysis below.

## IV.   ANALYSIS

Plaintiff's constitutional claims are brought under 42 U.S.C. § 1983, which

provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate

a violation of a right secured by the Constitution and the laws of the United States

[and] that the alleged deprivation was committed by a person acting under color of

state law."[111]  "The first step in evaluating a section 1983 claim is to 'identify the

---

their brief in support of their motion for summary judgment, and arguments may not be raised
for the first time in a reply brief.

[108]  Doc. 97 ¶¶ 49, 60, 65, 81, 86, 88.

[109]  *Id.* ¶¶ 87-90.

[110]  *Id.* ¶ 91.

[111]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[112]

Defendants in this case seek summary judgment as to all ten of Plaintiff's claims.  Plaintiff contends that additional discovery is needed before the motion for summary judgment can be resolved and also opposes the motion for summary judgment on its merits.  For the sake of clarity, I will first analyze Plaintiff's request for additional discovery and then address the summary judgment arguments pertaining to Plaintiff's ten legal claims *seriatim*.

### A.    Additional Discovery

When a party opposing a motion for summary judgment shows that it "cannot present facts essential to justify its opposition," the court may allow the parties additional time for discovery.[113]  "If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law."[114]

To properly request additional discovery for purposes of opposing summary judgment, "a party must indicate to the district court its need for discovery, what material facts it hopes to uncover and why it has not previously discovered the

---

[112] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

[113] Fed. R. Civ. P. 56(d).

[114] *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 761 (3d Cir. 2019) (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015)).

information."[115]  A properly filed request for additional discovery under Rule 56(d) is generally granted "as a matter of course."[116]  A request for additional discovery does not need to be made through a formal motion and can instead be raised through the brief opposing summary judgment.[117]  The decision of whether to permit additional discovery is left to the discretion of the district court.[118]

In this case, Plaintiff asserts in his brief in opposition to the motion for summary judgment that additional discovery is needed before the motion can be resolved.[119]  Specifically, he requests video evidence of the April 20, 2018 incident between him and the other inmate who was purportedly hired by Defendants and video evidence purportedly depicting Defendant McCord confiscating Plaintiff's mail and Defendants Dowd and Hoffner denying Plaintiff a shower.[120]  He also requests relevant phone records from 2018.[121]

All of the discovery that Plaintiff now requests was previously requested in Plaintiff's February 10, 2020 motion to compel discovery and March 11, 2020 brief in support of the motion.[122]  I denied the motion to compel discovery without prejudice on May 1, 2020, noting that Defendants had allowed Plaintiff to review

---

[115] *Dinnerstein v. Burlington Cty. College*, 764 F. App'x 214, 217 n.1 (3d Cir. 2019) (quoting *Radich v. Goode*, 886 F.2d 1391, 1393–94 (3d Cir. 1989)).

[116] *Avandia*, 945 F.3d at 761 (quoting *Shelton*, 775 F.3d at 468).

[117] *Shelton*, 775 F.3d at 567–68.

[118] *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 324 n.6 (3d Cir. 2005) (citing *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002)).

[119] Doc. 96 at 4.

[120] *Id.*

[121] *Id.*

[122] *See* Docs. 38, 47.

the relevant discovery materials and that Plaintiff could file another motion to compel discovery if he felt that Defendants' discovery responses were still deficient after he had reviewed the requested materials.[123]  Plaintiff subsequently filed another motion to compel discovery,[124] but he did not specifically request production of this evidence, and I deemed the motion withdrawn on August 26, 2020 for Plaintiff's failure to file a brief in support of the motion.[125]  Plaintiff has not explained why he failed to make any subsequent efforts to have this discovery produced.  Accordingly, I find that Plaintiff has failed to show why the requested information was not previously obtained through discovery and I will deny his request for additional discovery on that basis.[126]

### B.    Equal Protection

Plaintiff's equal protection claim is based on a class of one theory.[127]  To succeed on a class of one equal protection claim, a plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[128]  Defendants assert that they are entitled to summary judgment as to Plaintiff's equal protection claim because

---

[123]  Doc. 56.
[124]  Doc. 65.
[125]  Doc. 78.
[126]  *See Dinnerstein*, 764 F. App'x at 217 n.1.
[127]  *See* Doc. 22 at 14.
[128]  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

21

Plaintiff has not identified any similarly situated inmates who were treated differently from him.[129]

I agree.  Neither Plaintiff's brief in opposition to the motion for summary judgment nor his response to the statement of material facts identifies any similarly situated inmate who was treated differently from him.[130]  Accordingly, I will grant Defendants' summary judgment as to the equal protection claim.

### C.    Conspiracy

To succeed on a civil conspiracy claim, a plaintiff must prove "that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."[131]  Defendants assert that Plaintiff has not produced any evidence that Defendants reached such an understanding.[132]  Plaintiff does not address this argument in his opposition brief and does not offer any evidence of an understanding between Defendants.[133]  Accordingly, I will grant Defendants' motion for summary judgment with respect to the conspiracy claim.

### D.    Failure to Intervene

Plaintiff's amended complaint raises a claim for "failure to intervene," but does not allege any specific facts in support of this claim.[134]  Instead, Plaintiff

---

[129]  Doc. 92 at 11.

[130]  *See* Docs. 96-97.

[131]  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

[132]  Doc. 92 at 9-10.

[133]  *See* Doc. 96.

[134]  *See* Doc. 22 at 14.

simply states, "whereas the defendants/tortfeasors mentioned thru-out paragraphs #4-62 knew that their acts and omissions would amount to and/or have legal ramifications/consequences when these defendants/tortfeasors failed to stop violations of Jones' 1st, 5th, 6th, 8th and 14th amendment rights."[135]  Given the lack of specific allegations regarding this claim, I find that Plaintiff has failed to state a claim upon which relief can be granted and will grant Defendants' summary judgment on that basis.

### E.   Retaliation

A plaintiff bringing a retaliation claim under 42 U.S.C. § 1983 must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.[136]  Causation may be established by showing either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing.[137]  Causation may also be implied by "the record as a whole."[138]

---

[135] *Id.*

[136] *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019).

[137] *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[138] *Id.* (citing *DeFlaminis*, 480 F.3d at 267).

Plaintiff alleges that he was subjected to retaliation for two separate reasons: his filing of a habeas corpus case and his conversation with Defendants Wenerowicz, Hammond, Brittain, White and Sorber on April 4, 2018, during which he purportedly reported wrongdoing by prison staff.[139]

Defendants argue they are entitled to summary judgment with respect to the retaliation claims because the delay in Plaintiff graduating from the Behavioral Management Program was not a sufficiently adverse action to constitute retaliation and because there is no evidence of a causal connection between Plaintiff's habeas corpus case and the allegedly retaliatory action by Defendants.[140]  Defendants also assert that the prison would have taken the same action against Plaintiff regardless of whether he had filed the habeas corpus case because Plaintiff's disciplinary record provided an independent basis for Plaintiff failing to graduate from the Behavioral Management Program.[141]

I agree with Defendants that Plaintiff cannot establish causation with respect to his retaliation claim arising from his placement in the Behavioral Management Program.  Plaintiff alleges that he was not allowed to graduate from the Behavioral Management Program as retaliation for the filing of his habeas corpus petition, but his amended complaint indicates that the habeas corpus petition was filed "to

---

[139] *See* Doc. 22 at 6-8.
[140] Doc. 92 at 5-6.
[141] *Id.* at 7-8.

expose the cruel and unusual confinement conditions at SCI-Green[e]."[142]  Plaintiff

has not offered any evidence to show why Defendants located at SCI-Frackville

were motivated to retaliate against Plaintiff for a petition that implicated the prison

conditions at SCI-Greene.  Accordingly, he cannot establish a causal connection

between the filing of his habeas corpus case and the decision by SCI-Frackville

staff to delay his graduation from the Behavioral Management Program, and

summary judgment as to that claim is appropriate.

Plaintiff also alleges, however, that he was subjected to retaliation because

he reported misconduct to Defendants Wenerowicz, Hammond, Brittain, White,

and Sorber on April 4, 2018, and Defendants have not presented any argument as

to why they are entitled to summary judgment for that retaliation claim.

I find that there is sufficient evidence for this retaliation claim to proceed.

Plaintiff alleges (1) that he engaged in protected conduct by reporting misconduct

to supervisory prison officials; (2) that Defendants engaged in various acts of

retaliation against Plaintiff, including an alleged assault by Defendants Hoffner and

Palerino on October 2, 2018; and (3) that Defendants made various comments

indicating that the retaliatory actions were done in response to Plaintiff's protected

conduct, including, most notably, Hoffner and Palerino's alleged comments of

"yeah pussy now you have a reason to snitch" and "this ass whooping is a reason

---

[142]  Doc. 22 ¶ 22.

for you to file another lawsuit" during the alleged assault.[143]  Defendants have cited

statements from prison staff and other inmates indicating that the assault did not

happen,[144] but at this stage of litigation I cannot weigh the evidence or determine

the truth of the matter.[145]  There is no video or other evidence to conclusively

prove that the assault did not happen, so the question of whether Hoffner and

Palerino assaulted Plaintiff on October 2, 2018 remains a genuine issue of material

fact that precludes summary judgment.  The same is true of the other incidents of

retaliation that allegedly followed from Plaintiff reporting staff misconduct to

Wenerowicz, Hammond, Brittain, White, and Sorber, as Defendants have not

offered any evidence to establish the absence of genuine issues of material facts

with respect to those incidents.  Accordingly, I will grant summary judgment to the

extent that Plaintiff's retaliation claim is predicated on his failure to graduate from

the Behavioral Management Program, but will otherwise deny summary judgment

with respect to Plaintiff's retaliation claim.

###### F.   Cruel and Unusual Punishment

I will next consider Plaintiff's cruel and unusual punishment claim under the

Eighth Amendment.  Although the scope of Plaintiff's Eighth Amendment claim is

not specifically delineated in his amended complaint, I liberally construe the

---

[143]  *See* Doc. 22 at 13.
[144]  *See* Doc. 91 ¶¶ 57-58.
[145]  *Anderson*, 477 U.S. at 249.

amended complaint as raising excessive force claims arising from the alleged
assaults on July 4, 2018 and October 2, 2018.

The Eighth Amendment "protects convicted prisoners from any force
applied 'maliciously and sadistically for the very purpose of causing harm.'"[146]
Thus, the question a court must answer in considering an excessive force claim is
"whether force was applied in a good-faith effort to maintain or restore discipline,
or maliciously and sadistically to cause harm."[147]  Courts must consider several
factors in conducting this analysis, including:

> (1) the need for the application of force; (2) the relationship between
> the need and the amount of force that was used; (3) the extent of the
> injury inflicted; (4) the extent of the threat to the safety of staff and
> inmates, as reasonably perceived by responsible officials on the basis
> of facts known to them; and (5) any efforts made to temper the severity
> of the forceful response.[148]

Excessive force "may constitute cruel and unusual punishment even when the
inmate does not suffer serious injury."[149]  Injury and force "are only imperfectly
correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously
beaten by guards does not lose his ability to pursue an excessive force claim
merely because he has the good fortune to escape without serious injury."[150]

---

[146] *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

[147] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

[148] *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

[149] *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (internal alterations omitted) (quoting *Hudson*, 503 U.S. at 7).

[150] *Id.* at 38.

Although courts reviewing motions for summary judgment are required to view evidence and draw reasonable inferences in the light most favorable to the non-moving party, they are not required to adopt the non-movant's version of events when it is "blatantly contradicted by the record."[151]  Thus, where the non-moving party's version of evidence is "utterly discredited" by video evidence, the court should view the facts in the light depicted by the video evidence.[152]

Defendants argue they are entitled to summary judgment with respect to the July 4, 2018 incident because video evidence of the incident contradicts Plaintiff's version of events and depicts Plaintiff attacking the other inmate rather than the other inmate attacking Plaintiff.[153]  Defendants also assert that documentary evidence related to the July 4, 2018 incident shows that the other inmate was attacked by Plaintiff.[154]

I will grant summary judgment with respect to the alleged assault on July 4, 2018.  Defendants have produced surveillance footage from July 4, 2018,[155] and the summary of the prison's investigation of the incident indicates that the relevant interaction between Plaintiff and the other inmate occurred between the time stamps of 19:44:32 and 19:49:26 on the surveillance footage.[156]  The surveillance

---

[151] *Scott v. Harris*, 550 U.S. 372, 380 (2007).
[152] *Id.*
[153] Doc. 91 ¶¶ 17, 28, 33, 50, 55.
[154] *Id.* ¶¶ 55-56.
[155] *See* Defendants' Exhibit B.
[156] *See* Doc. 91-1 at 111, 122.

footage during that time period plainly does not show Plaintiff being assaulted, and Plaintiff has not produced any evidence to refute the contention that the relevant interaction occurred during that time period, nor has he contested the authenticity of the surveillance footage.

I will deny summary judgment, however, with respect to the alleged assault by Defendants Pallerino and Hoffner on October 2, 2018.  As I noted above in my analysis of Plaintiff's retaliation claim, there is a genuine issue of material fact as to whether the assault occurred, and I cannot resolve that factual dispute at this stage of litigation.

### G.    Access to Courts

To establish a violation of a plaintiff's right of access to the courts, a plaintiff must show that some action by defendants caused an actual injury to his ability to litigate a nonfrivolous legal claim.[157]  Plaintiff's access to courts claim is based on Defendant McCord's alleged confiscation and subsequent destruction of documents that Plaintiff attempted to mail to the Third Circuit related to cases that were pending before that court: *Jones v. Wetzel*, No. 17-3326 (3d Cir. filed Nov. 20, 2017) and *Jones v. Wetzel*, No. 17-3482 (3d Cir. filed Dec. 6, 2017).[158] Plaintiff alleges that he intended to submit prisoner declarations and "other

---

[157]  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).
[158]  *See* Doc. 22 at 9-10.

exclusive one of a kind materials" that would have persuaded the Third Circuit to rule in his favor in both cases.[159]

The records of the two cases before the Third Circuit belie Plaintiff's access to courts claim.  The record of the earlier case indicates that the case was dismissed for lack of appellate jurisdiction,[160] while the Third Circuit in the later case affirmed the dismissal of most of Plaintiff's claims for a variety of pleading defects and granted summary judgment on the remaining excessive force claim because Plaintiff failed to exhaust administrative remedies with respect to that claim.[161] Plaintiff has not presented any evidence to show how the declarations and "one of a kind materials" that he intended to submit to the Third Circuit could have altered these results.  Accordingly, he has failed to show that he suffered an actual injury to his access to the courts and summary judgment is appropriate.

## H.    Due Process

Plaintiff's due process claim is based on the alleged confiscation of one newspaper.[162]  This is precisely the sort of *de minimis* deprivation of property with which the Due Process Clause is not concerned.[163]  Accordingly, I will grant Defendants' summary judgment as to this claim.

---

[159] *Id.* at 10.

[160] *See Jones*, No. 17-3326.

[161] *See Jones v. Wetzel*, 737 F. App'x 61, 64-66 (3d Cir. 2018).

[162] *See* Doc. 22 at 7.

[163] *See Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977))); *Goss v. Lopez*, 419 U.S. 565, 576 (1975) ("The Court's view has been

## I.     Fourth Amendment

Plaintiff mentions the Fourth Amendment at several points throughout his amended complaint, but it is difficult to discern what Fourth Amendment claim he is attempting to make.[164]  To the extent that he attempts to raise a Fourth Amendment claim based on alleged searches of his cell, Defendants are entitled to summary judgment.  Prisoners do not have any subjective expectation of privacy in their cells.[165]  Accordingly, I will grant Defendants' summary judgment as to the Fourth Amendment claim.

## J.     State Law Tort Claims

Defendants seek summary judgment as to Plaintiff's state tort law claims, which they characterize as relating to the confiscation of Plaintiff's newspaper.[166] Defendants' characterization has no basis in the language of Plaintiff's amended complaint, which—with the exception of Plaintiff's conversion claim—nowhere indicates that Plaintiff's state law claims are based on the confiscation of Plaintiff's newspaper.[167]  Accordingly, there is no merit to Defendants' summary judgment argument.

---

that as long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause."); *see also, e.g.*, *Walker v. Jackson*, No. 5:08-CV-147, 2009 WL 1768547, at *9 (S.D. Miss. June 23, 2009) ("The Court simply cannot conclude that being deprived of a newspaper for two weeks is tantamount to a deprivation of due process, as 'there is a *de minimis* level of imposition with which the Constitution is not concerned.'" (cleaned up) (quoting *Bell*, 441 U.S. at 539)).

[164] *See* Doc. 22.
[165] *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).
[166] *See* Doc. 92 at 1, 11.
[167] *See* Doc. 22.

Nevertheless, I will dismiss Plaintiff's state law tort claims pursuant to 28 U.S.C. § 1915(e)(2) because the claims fail to state a claim upon which relief may be granted.[168]  Plaintiff's tort claims allege defamation, "intentional and conversion torts," and "peculiar risk and superior knowledge torts."[169]

To state a claim for defamation under Pennsylvania law, a plaintiff must allege, *inter alia*, that defendants published a communication that was defamatory towards the plaintiff.[170]  Plaintiff alleges that unnamed Defendants subjected him to "defaming slanderous statements with the Commonwealth Courts," but he nowhere alleges what those defamatory statements were.  Accordingly, Plaintiff fails to state a defamation claim upon which relief may be granted.

Plaintiff's claims for "intentional and conversion torts" similarly fail. Plaintiff does not specify which intentional torts he is alleging or which defendants committed the intentional torts, and there are no facts alleged to support a claim for conversion.[171]  To state a claim for conversion under Pennsylvania law, a plaintiff must allege "the deprivation of [the plaintiff's] right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."[172]  Plaintiff's conversion claim fails

---

[168] *See* 28 U.S.C. § 1915(e)(2) (stating that court "shall dismiss" claim brought by plaintiff proceeding *in forma pauperis* "at any time" if the court determines that the claim "fails to state a claim on which relief may be granted").

[169] *See* Doc. 22 at 15.

[170] *Forbes v. King Shooter's Supply*, 230 A.3d 1181, 1187 (Pa. Super. Ct. 2020).

[171] *See* Doc. 22.

[172] *Acme Markets, Inc. v. Seltzer*, 244 A.3d 469, 474 (Pa. Super. Ct. 2020).

because he does not specify which Defendants committed the tort.  Plaintiff alleges

that he complained about the confiscated newspaper to Defendants Brittain,

Newberry, Dowd, and Albert and that none of those Defendants rectified the

situation,[173] but he does not allege which Defendants actually confiscated or

possessed the newspaper.

Plaintiff's claims for "peculiar risk and superior knowledge torts" likewise

fail.  Plaintiff does not specify what torts he is attempting to allege with these

claims, and neither "peculiar risk" nor "superior knowledge" are recognized as

torts under Pennsylvania law.[174]

### K.    Personal Involvement

Defendants seek summary judgment in favor of Defendants Wenerowicz,

Brittain, Hammond, White, Sorber, Newberry, Dowd, Boyce, Albert, Eidem,

Moser, Young, Pallerino, McCord, Hoffner, and Kathy for Plaintiff's failure to

allege their personal involvement.  Because I have ruled above that Defendants are

entitled to summary judgment with respect to all of Plaintiff's claims other than the

retaliation claim arising from Plaintiff's April 4, 2018 conversation with

---

[173]  *See* Doc. 22 at 7.

[174]  Although the "peculiar risk" doctrine is a recognized element of Pennsylvania tort law, the doctrine is not relevant to the present case.  The peculiar risk doctrine allows landowners to be held liable for injuries sustained by the employees of a contractor entering the land if (1) a risk is foreseeable to the contractor at the time the contract is executed and (2) the risk is different from the ordinary risk expected from the general type of work to be performed.  *See, e.g.*, *Wombacher v. Greater Johnstown Sch. Dist.*, 20 A.3d 1240, 1243 n.2 (Pa. Commw. Ct. 2011); *Chenot v. A.P. Green Servs., Inc.*, 895 A.2d 55, 64 (Pa. Super. Ct. 2006).

Wenerowicz, Hammond, Brittain, White, and Sorber and the cruel and unusual punishment claim arising from the October 2, 2018 incident, my personal involvement analysis will be limited to whether Defendants were personally involved in the facts giving rise to those claims.  The amended complaint clearly alleges that Hoffner and Palerino were the only Defendants personally involved in the alleged assault on October 2, 2018, so I will further limit my analysis to whether Defendants were personally involved in the facts giving rise to Plaintiff's remaining retaliation claim.

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.[175]  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.[176] Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence.[177]  A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights.[178]

Defendants Newberry, Dowd, Moser, and Young are entitled to summary judgment for lack of personal involvement because Plaintiff does not make any

---

[175] *Jutrowski*, 904 F.3d at 289.
[176] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).
[177] *Id.*
[178] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

allegations against those Defendants pertaining to his retaliation claim.[179]
Defendant O'Kane is similarly entitled to summary judgment for lack of personal
involvement despite the fact that Defendants have not made a personal
involvement argument on her behalf because she is not mentioned in any
allegations pertaining to Plaintiff's remaining retaliation claim.

Defendants Wenerowicz, Brittain, Hammond, White, Sorber, and Albert are
also entitled to summary judgment for their lack of personal involvement.  The
amended complaint does not allege that these Defendants personally committed
any retaliatory acts against Plaintiff, and the only allegation of knowledge and
acquiescence by these Defendants is that they gave "tacit approval" for McCord
confiscating Plaintiff's legal filings.[180]  Allegations of tacit approval by a
supervisory official may be sufficient to allege personal involvement when the
supervisory official "knows that the subordinate is violating someone's rights but
fails to act to stop the subordinate from doing so,"[181] but here there is no allegation
that Wenerowicz, Brittain, Hammond, White, Sorber, or Albert knew that McCord
was confiscating Plaintiff's mail, and thus there is no way they could tacitly
approve of such an action.

---

[179] *See* Doc. 22.
[180] *See id.* at 10.
[181] *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in nonrelevant part by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006).

Defendant Boyce is entitled to summary judgment for lack of personal involvement.  Plaintiff alleges that Boyce fabricated a misconduct report against him on October 1, 2018,[182] but the events of October 1, 2018 are not mentioned as something that was done in retaliation for Plaintiff reporting misconduct to Defendants Wenerowicz, Hammond, Brittain, White, and Sorber.[183]

The remaining Defendants—Eidem, Pallerino, McCord, Hoffner, and Kathy—are not entitled to summary judgment, as Plaintiff sufficiently alleges their personal involvement.  Defendants Pallerino and Hoffner allegedly assaulted Plaintiff on October 2, 2018, while allegedly making statements indicating that the assault was done in retaliation for Plaintiff reporting misconduct.[184]  Hoffner also allegedly committed a retaliatory cell search against Plaintiff on September 30, 2018.[185]  Following the alleged assault by Pallerino and Hoffner, Defendants Eidem and Kathy allegedly told Plaintiff that he would not receive any medical care if he continued to complain about prison conditions and Eidem allegedly told him that assaults by prison officials would get worse if he continued to

---

[182] Doc. 22 at 13.

[183] *See id.* at 8.

[184] *Id.* at 13.  Although October 2, 2018 is not listed as one of the dates on which Plaintiff suffered an attack as retaliation for reporting misconduct to Wenerowicz, Hammond, Brittain, White, and Sorber, *see id.* at 8, the statements allegedly made by Pallerino and Hoffner—"yeah pussy now you have a reason to snitch" and "this ass whooping is a reason for you to file another lawsuit"—support an inference that the assault was done in retaliation for Plaintiff's reporting of misconduct.  *See id.* at 13.

[185] *Id.*

complain.[186]  Finally, Defendant McCord allegedly confiscated Plaintiff's legal

mail on July 6, 2018 in retaliation for Plaintiff reporting misconduct.[187]

## L.    Exhaustion

Finally, Defendants argue in their reply brief that Plaintiff failed to exhaust

administrative remedies prior to filing suit in this case.[188]  I will disregard this

argument because it was not raised in Defendants' original brief and arguments

may not be raised for the first time in a reply brief.[189]

# V.    CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary

judgment in part and deny it in part.  Summary judgment will be denied with

respect to Plaintiff's claims of retaliation against Defendants Eidem, Pallerino,

McCord, Hoffner, and Kathy arising from Plaintiff's April 4, 2018 conversation

with Wenerowicz, Hammond, Brittain, White, and Sorber.  Summary judgment

will also be denied with respect to Plaintiff's cruel and unusual punishment claim

against Defendants Hoffner and Pallerino arising from the alleged assault on

October 2, 2018.  Summary judgment will be granted to Defendants in all other

---

[186] *Id.*

[187] *See id.* at 8-10.  McCord also allegedly stole Plaintiff's property on March 27, 2018, *see id.* at 9, but this action could not have been done in retaliation for Plaintiff's meeting with Wenerowicz, Hammond, Brittain, White, and Sorber because it happened eight days before that meeting occurred on April 4, 2018.  *See id.* at 7.

[188] Doc. 98.

[189] *See, e.g., Hewlette-Bullard ex rel. J.H-B. v. Pocono Mtn. Sch. Dist.*, 522 F. Supp. 3d 78, 106 n.10 (M.D. Pa. 2021) ("It is improper for a party to present a new argument in a reply brief." (quoting *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F. Supp. 2d 522, 529 (M.D. Pa. 2004))).

respects.  Plaintiff's motion for an order denying the motion for summary

judgment will be denied as moot.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge