IN THE UNITED STATES DISTRCIT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marcellus A. Jones, (Plaintiff), | | Civil Action #18-2353 |
| VS. | FILED WILLIAMSPORT NOV 21 2024 PER ___ DEPUTY CLERK | Chief Judge Matthew Brann |
| Eidem, Et,Al,. (Defendants), | | JURY TRIAL DEMANDED |

## BRIEF IN SUPPORT OF EXHAUSTION MOTION

### I. Relevant Background

1) This is a civil action pursuant to 42 U.S.C. §1983, brought by Marcellus A."Jones", the plaintiff, PRO SE, in order to redress wrongs done to him while he was incarcerated at SCI-Frak, within the custody of the Pennsylvania Department of Corrections,"PADOC".Doc #1.

2) After numerous petitions were filed by the parties involved a trial was held on June 5,2024, before Chief Judge Matthew Brann, and following the completion of said hearing. The parties were ORDERED to file post trial briefings for: Exhaustion. Doc #202.

3) In compliance with the foregoing court order, Jones submits the following challenges to the defendants affirmative defense of non-exhaustion.

### II. Questions Presented

4) Did the defendants waive an exhaustion defense?

5) Did prison staff sabotage/obstruct grievance #766222 by not adhering to PADOC grievance policies, effectively causing a due process violation to occur?

6) Did prison staff sabotage/obstruct the grievance process by not issuing Jones a reply to grievance # 766222 ? Recommended Answers to the above questions: yes.

### III. Standard of Review

7) The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'" Jones v. Bock, 549 U.S. 199, 218,

127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); see Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures."). The burden of proving non-exhaustion lies with the defendants asserting the defense. Jones, 549 U.S. at 216-17. A court evaluating the "threshold"{2023 U.S. Dist. LEXIS 21} issue of exhaustion looks at whether the inmate "compli[ed] with the prison's specific grievance procedures" and whether those procedures were available to the inmate. Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. 2018) (quoting Drippe, 604 F.3d at 781, and Small, 728 F.3d at 269-71). Baez-Garcia v. United States, 2023 U.S. Dist.Lexis 34926

8) Exhaustion, as a precondition for bringing suit, is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" Small v. Camden County, 728 F.3d 265, 270 (3d Cir. 2013). "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action. Booth, 532 U.S. at 741.

   IV. Discussion

9) PADOC policy dictates that: "804-§1.C.3 The staff member that serves as the grievance officer shall not be directly involved, or named as the subject of the grievance". The grievance officer assigned to grievance #766222 lieutenant "Gregiore", was not permitted to address this grievance due to Jones using specific language in the body of this grievance that states "I'm filing this grievance against ALL of the above mentioned staff", once the SCI-Frak grievance coordinator assigned Gregiore as the responding grievance officer this grievance was efffectively voided the grievance policy regarding this grievanceand rendered administraive remedies unavailable to Jones. Since, "[n]othing in [in the rules] requires an inmate to grieve a breakdown in the grievance process", Tunrner v. Burnside, 541 F.3d 1077, 1083 (11 Cir.2008); also "we will not condition exhaustion on unwritten or "implied" requirements", Jackson v. Ivens, 244 Fed. Appx. 508, 513 (3 Cir. 2007). As a result Jones did not know how to proceed where the PADOC grievance does not have instructions explaining what to do when the wrong officer - Gregiore - responds to a grievance complaining about him, "where it was alleged that "there is no grievance committee here your grievances are simply turned over to the person you filed on and you get threatened", Martin v. Sizemore, 2005 WL 149121,*1,*3,(E.D.KY.June 22,2005); also " the inmates must be given the benefit of the doubt based on what appears to be the written policy to which they are bound", Parish v. Lee, 2004 WL 877103,*4,(E.D.La. Apr.22,2004).

10) It is Jones' contention that " prison officials may not take unfair advantage of the exhaustion requirement ... and a remdy becomes "unavailable"if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting", "a prisoner... who received no instructions what to do about it, did "all that was reasonable to exhaust",

Dole v. Chandler, 438 F.3d 804, 809, 812 (7 Cir. 2006), in no way can this court countenance such antics by the defendants since "a remedy that prison officials prevent a prisoner from "utiliz[ing]" is not an "available" remedy under §1997e(a)..."Miller v. Catlett, 2010 WL 444734,*3 (S.D.Cal.Feb.1,2010).

11) Before this case reached this stage of the proceedings Jones submitted filings that had attached exhibits, Doc. #96-104, these docket entries contained proof of his efforts to resolve complications he was having with getting grievance #766222 filed to completion, Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Indeed, this would be the third time that Jones has brought his challenges to the defendants claims of non-exhaustion to this courts attention, whereas previously he presented his arguments within filings at: "statement of facts", "petition opposing non-exhaustion", and within the body of his "summary judgment" pleadings.

12) Did the defendants waive an exhaustion defense ? Jones argues that the defendants are attempting to get another chance to redress the already decided issue of exhaustion is prejudicial to him since they waited until the last minute and are now trying a hail mary, see what sticks approach to gain relief "waiver enforced based on 'undue delay'", Mendez v. Barlow, 2008 WL 2039499, *2 (W.D.NY.May 12,2008), noting that plaintiff's could have timely exhausted and returned to court had defense been timely raised", Handberry v. Thompson, 446 F.3d 335,343 (2 Cir.2006), as a result of the defendants late entry petition trying to bring an exhaustion defense its obvious that Jones "would be prejudiced by having to re-file after investing time and effort in completing discovery", Thomas v. Keyser, 2004 WL 1594865,*2 (S.D.NY.July 16,2004),"holding that court'is compelled to address the merits' of a exhaustion claim as to which defendants disavowed an exhaustion defense", Ludy v. Sherman, 2007 WL 320831,*7(W.D.Pa.Jan.30,2007).

13) Due to the untimeliness of the defendants assertion of a non-exhaustion defense Jones put forth the challenge that their first mention being made in a reply petition within the summary judgment filings was a highly prejudicial,"holding otherwise well-taken non-exhaustion defense, raised on a summary judgment motion, was waved by failure to plead it or raise it by motion to dismiss", Wright v. Goord, 2006 WL 839532,*5(N.D.NY.Mar.27,2006). The defendants first mention of non-exhaustion was at Doc.# 90,"it is improper for party to present a new argument in a reply brief",Hewlette-Bullard ex.rel.J.H-B v. Pocono Mtn.Sch.Dist.,552 F.Supp.3d 78, 106 n.10(M.D.Pa.2021), which said late filing is tantamount to re-litigation of what's been decided and as such should be denied to the defedants.

14) Did prison staff sabotage / obstruct grievance #766222 by not adhering to PADOC grievance policies,effectively causing a due process violation to occur ? Yet again, despite any claims to the contrary or if it is recognized or not, Jones has entered motions and briefs into this court's records previously in order to resolve all discrepancies about the unavailiblity of internal administrative remedies.

Doc.#96-104, where Jones received a response from the wrong prison staff that violated their own grievance policies, Dc Adm #804 supra. After a blatant disregard like this nowhere is there anyonbe to explain why a detour awat from PADOC policy took place, and the inevitable results of another prison staff member doing what they wanted by not issuing Jones a reply to grievamce #766222-SEE: attached EX.A. Jones' inquiries to the SCI-Frak grievance coordinator - Newberry- went *unaswered* and these documents are recorded within the grievance records, but were left out of the defendats filings with this court deliberately to further their false narrative that he never completed the grievance process which is not the case.

15) The defendants want documents to remain hidden from this court that would show that Jones never got a response to his appeal in order to continue with their Totally false narrative that Jones botched his chance to exhaust his remedies that were supposedly available to him even though this is not the case since none of the staff at SCI-Frak, or PADOC headquarters whose jobs ot was would supply him with a response to his appeal of grievance #766222,"where plaintiff alleged he never received a response to his grievance defendants failed to meet their burden when they provided no evidence about their procedure or what happened to his grievance", Owens v. Campbell,2007 WL 2128244, *4,n.3(D.C.S.C.Mar.26,2007); "Declaration that showed only that the declarant had searched in her office did not show that plaintiff failed to file grievance", DeFranco v. Wolfe, 2007 WL 1704770,* 4-5(W.D.Pa.June12,2007). For instance, the exhibits that Jones filed with Doc.#96 and the cover letters he sent to SCI-Frak's grievance coordinator Newberry asking about the reply to the appeal he filed to grievance #766222 are not being presented and no one is saying that they swear that the records regarding grievance #766222 are complete. Therefore, Jones would now lioke to turn the court's attention his statement of facts, Doc.#96-¶92 specifically, and correlative records in their entirety, which shows Jones informed prison staff about the problem of not getting a response, however nothing was done, so the defendants cannot try to blame Jones. Especially, where they where they are fully aware that this is the case and they are doulbing down on their position despite these facts, is mind boggling, and being done to deflect from the fact that they are hiding the documents from this court and not having anyone submit affidavits or declarations - sworn or unsworn -attesting to a complete record being shown before this court, "defendants have provided only "minimal explanation or proof " concerning there relevant grievance procedures did not establish non-exhaustion", Ammouri v. Adappt House, Inc., 2008 WL 2405762,*3(E.D.Pa.June12,2008).

16) Question - Did prison staff sabotage / obstruct the grievance process by not issuing Jones a reply to grievance #766222 ? : Jones contends that after he submitted grievance #766222 he never got a response, "defendants failed to substantiate their non-exhaustion defense when they failed to present a declaration from [a] staff member", Arias v. Bell, 2008 WL 4369309,*1(S.D.Cal.Sep.23,2008), then after repeatedly requesting an answer to his appeal pursuant to: Dc Adm #804 none were given and now to cover-up prison staff's mistakes the defendants are refusing to reveal the entire record related to

grievance #766222 since said records would show remedies were unavailable "defendats bear the burden of specifying what records were "available" to plaintiff", Conner v. Martinez, 2006 WL 2668977,*2(D.Ariz.Sep.14,2006); "finding...plaintiff credible as to mailing [appeal]and as to the unreliability of the internal mail", Peterson v. Roe, 2007 WL 432962,*1(D.NH.Feb.2,2007), which would show inquiries that Jones made seeking answers about grievance #766222.

    17) The next thing that Jones asks this court to recognize is that, BUT FOR, the various prison staff's engaging in conduct that violates PADOC's internal administrative grievance process', "prison policies are not ambiguous or left to the interpretations of each guard and prison staff", Sutton v. Rasheed, 323 F.3d 236,255-56(3d.Cir.2008), again if Jones would have gotten the next level grievance responses, or an answer from prison grievance staff he could have completed the internal grievamce processes. Although Jones brought other notifications to the attention of prison administrators,Doc.#96, that like his letters of inquiry wenrt unanswered. "[W]here officials refused to process grievanvces contrary to policy, prisoners were not required to take steps not prescribed in the policy to get around him", Miller v. Berkbile, 21008WL 6355562*7-9(N.D.Tex.Mar.10,2008); "holding prison officials did not establish failure to exhaust availvanble remedies where their policies did not 'clearly identif[y]' the proper remedy and there was no 'clear route' for prisoners to challenge certain decisions", Westfer v. Snyder, 422 F.3d 570, 580 (7th Cir.2005); also "denying motion to dis miss for non-exhaustion in light of plaintiff's objections that prison officials failed to comply with their own procedures", Dunmire v. DePasqual, 2005WL 4050175,*1(W.D.Pa.Oct.21,2005); "having failed to mabide by strictures of their own regulations, defendants should not be allowed to claim plaintiff's non compliance was a bar",Shaheed-Muhammad v. Dipaolo, 393 F.Supp.2d 80,97(D.Mass.2005).

    18) The special circumstances doctrine is the method of scrutiny needed here since the dispute between patries make the issue of non-exhaustion complex, "refusing to dismiss, noting that plaintiff had exhausted twice in the face of a disappearing grievance and prison official's own procedural mistakes", Martinez v. Weir, 2006 WL 28847775,*2(D.Conn.Oct.10,2006);"refusing to dismiss for non-exhaustion where the failure to exhaust was caused by prison official's "failure to follow their own rules", also "policy satisfied where grievance response said '[a]ll staff involved were interviewed regarding your claims" and the defendants were specifically named in the response", Sides v. Cherry,2007 WL 1411841,*3(W.D.Pa.May10,2007). The connection between prison staff's deviation away from PADOC policies about who can reply to grievances and prison staff's unwillingness to issue grievance documents must be examined by ghtis court, "a prisoner who appealed, but appeal was not received...had exhausted", Lopez v. Smiley,2003 WL 22217109,*2(D.Conn.Sep.22,2003); "rejecting argument that plaintiff should have filed even more grievances about defendants"failure to respond", Martinez v. Snyder, 2002 WL 484911,*3(N.D.Ill.Mar.28,2002); also "prisoner who was prevented from appealing lack of decision at intermediate stage, filed suit, and was later afforded an opportunity to appeal, had exhausted

when he was prevented from appealing ", Daker vs. Ferrero,2004 WL 5459957, * 2(N.D.Ga.Nov.24,2004).

19) Jones' version of what happened concerning grievance #766222 is clearly supported by the records, for example his multiple exhibits - EX.A, Doc.#96 - presented relevatory proof that, "a prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the time for responding has expired", <u>Poe vs. Ennis, 177 F.3d 393, 394(5th Cir.1999) and Whitington vs. Ortiz, 472 F.3d 804, 807-08(10th Cir.2007)</u>. To "complete the administrative review process, means "substantial" compliance with the prison's grievance procedures", Spruill vs. Gillis,376 F.3d 218, 231(3d Cir.2004), the PLRA "mandates that an inmate exhaust "such administrative remedies as are available" before bringing suits to challenge the prison conditions", <u>Ross vs. Blake, 136 S.Ct.1850(2016); Nyhuis vs. Reno, 204 F.3d 65,739(3d. Cir.2000)</u>.

20) Within the PADOC various policies exist which allow inmates to chalenge aspects of their confinement, those policies include:

    (1) the Inmate Abuse Policy, Dc-Adm001;

    (2) the Inmate Grievance Policy, Dc-Adm804; and

    (3) the Disciplinary Policy, Dc-Adm801.

See PA Dep't OF Corr.#001,801,804, available at http://www/cor.state.pa.us. Dc-Adm 804 covers grievances in general, Dc-Adm001 covers general reports of abuse, Dc-Adm801 covers inmate discipline. Id. Only Dc-Adm 001 and 804are implicated in this case. Dc-Adm 001§B permits prisoners to use different methods to notify prison administrators that he is being subjected to abuses, the different ways available are through "abuse hot-line calls", and "third party reports". See PA Code§§3 PA Dep't Of Corr., #Dc-Adm 001.

21) Jones asserts that he exercised the option of using the PADOC's inmate abuse hot-line multiple times, as another way of notifying prison staff regarding the complaints he mentioned in grievance #76622, his verbal complaints were recorded via this avenue which said verbal recordings are authorized by §§c-Adm 001. Doc.#96.

22) Dc-Adm 804 permits any inmate to seek review of problems that may arise during the course of confinemnet. See 37 PA Code §93.9(a); Pa Dep't Of Corr.#Dc-Adm804, available at http//www/cor.state.pa.us. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's grievance ccoordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of adverse action an inmate may appeal to the facility manager ofthe institution. Thereafter, within fifteen days of an adverse action by the facility manager, an inmate may file a finla appeal to the secreatry's office of inmates grievances and appeals. An appeal to <u>final review cannot </u>be completed unless an inmate complies with all three (3) levels of review and comply with all procedural requirements of the review

process in order to fully exhaust the issue. See: Booth, 206 F.3d at 293,n 2(outlining Pennsylvania's grievance review process); Ingram v. SCI-Camp Hill, 448 F. Appx 275, 279(3d. Cir.2011).

23) the undisputed evidence that Jones was not allowed remedies with regards to grievance numbers, #771264, 771555,766222, and 766223, these grievances were all sabotaged by prison staff when:

1) they had prison staff "named in the grievance" issue replies to Jones' grievances; and

2) no one would issue a response to Jones' inquiries.

So rather than provide any evidence that he properly exhausted administrative remedies, Jones argues that the administrative bremedies were unavailable to him because prison staff failed to timely respond to his grievances. Doc.#96-102. He asserts he tried to exhaust these grievances through Dc-Adm 804 to no avail, "the P.L.R.A. requires that prisoners comply with procedural demands of a system created by their jailors,' those jailors must also "comply with the demands of the system they created", Shifflett v. korszniak, 934 F.3d 356,365(3d.Cir.2019); Small v. Camden County, 728 F.3d 265, 268(3d.Cir.2013); drippe v. Tobelinski, 604 F.3d 778, 781(3d.Cir.2010), therefore, "as soon as a prison fails to respond to properly submitted grievance or appeal within the time prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the P.L.R.A.'s exhaustion requirements". Id.

24) Furthermore, "the court reasoned that its holding was a matter of fairness because.... "prison officials are likely to have legal expertise and as important, superior access to prison administrative records in comparison to prisiners. Prison officials and their attorneys can also readily provide the courts with clear, typed explanations, including photocopies of relevant administrative regulations. Pro se prisoners often lack even rudimentary resources". Id. at 295. "Despite the litany of grievances [the plaintiff] presented to this court, the record reveals that he has attempted to file only one administrative remedy form", Hill v. Smith, Civ. No.05-1724 WL 2666597, at * 2(M.D.Pa.Oct.19,2005); see also, Lee v. sewell, 159 Fed. Appx. 419,422, n4(3d.Cir.2005). Adversely, Jones' arguments are in stark contrast to the NO evidence supported offerings presented before this court by attorney Mr. Harry "Coleman", which said misrepresentations from Colemanwere based on "hot-air" since Jones' grievance filings neutralizes a claim that fear of retaliation caused Jones to not file an appeal. His grievance #766222, was filed on: Oct.16,2018, and he was transferred before the time for filing a reply was due , said transfer made it safe for Jones to file any and all corresponding documents. A transfer occurring on: Oct.22,2018, allowed grievances and appeals to be submitted without any fears of retaliation from the prison staff involved, which these circumstances clearly contradicts Mr. Coleman's arguments otherwise. Since, Jones knew that a transfer negated non-exhaustion based on fear, he asked Mr. Coleman NOT to raise any such claims, however Mr. Coleman went ahead with his baseless arguments anyway. FOR THE RECORD, Jones is now stating that while he was confined at SCI-Frak he was in constant FEAR of retaliation, once removed from SCI-Frak that was no longer the case because there was no longer constant / daily threats being made by the defendants.

25) Since Jones never wished to pursue a claim that relied on "fear of retaliation" he is now trying to set the record straight, "plaintiff's allegation of urgent need for medicla untervention did not justify failure to exhaust before filing", Cochran v. Caruso, 2008 WL 397597, *3(W.D.Feb.11,2008); "asserting that a prisoner who was transferred after an incident still had five days of the seven-day time limit when he arrived at the new prison...", Crump v. may, 2006 WL 6215916,*3(D.Del.Mar.14,2006). It is clear that good reasons exist as to why grievance #766222 was not completed, outside fof circumstances involving fear, "holding that prisoner who said he did not exhaust for fear of retaliation should have filed a grievance after his transfer to the "safety" of another state...", Hemingway v. Lantz, 2006 WL 1237010,*2(.,N.H.May 5,2006) ;

"The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75. A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive subject matter or a general fear of retaliation as a basis for excusing a prisoner's failure to exhaust."

Pena-Ruiz v. Solorzano, 281 F.App'x 110,113(3d.Cir.2008).

26) Because there is such a very heavy sigificance at this stage of these proceedings, the vast distinctions between representations being made by Mr.Coleman and Jones are not merely differences in legal strategies without distinctions. The major factors to be scrutinized is once the transfer took place Mr.Coleman's legal strategy was unsupported by the grievamce records, "[t]he P.L.R.A. does not excuse exhaustion for a prisoner ... who is afraid", Broom v. Engler, 2005 WL 3454657(W.D.Mich.Dec.16,2005), whereas Jones' allegations that ultimately it is a double violation of PADOC policy that Jones wishes to present to this court, and neither violations are acceptable, especially where defendants want to support a non-exhaustion defense. Supra, Dipaolo at 393. Also see: Dumire v. DePasqual. Consequently, Hemingway stands for the position that:

"In Hemingway's complaint, he concedes that he did not exhaust his administrative remedies for fear of retribution from the New Hampshire corrections officers. However, given that he filed this action from Connecticut, Hemingway offers no reason why he could not have filed a grievance with the NHSP from the safety of that state. Further, § 1997e does not provide for an exception to the exhaustion requirement based on a plaintiff's fear of retribution for filing a grievance. Courts may not read exceptions into the exhaustion requirement that were not supplied by Congress in § 1997e. Booth, 532 U.S. at 741 n.6."

Hemingway v. Lantz, Id.

27) What is absolutely undisputed within the grievance records, is the fact that grievance #76622 was a complaint against Gregiore which constitutes a clear departure from Dc-Adm 804 policy, "delining to dismiss in light of plainytiff's allegation of "total disarray" ... with regards to the grievance process,

Williams v. Hagen, 2005 WL 1204324, *2(D.Neb.May 11,2005), as a result Jones' "failure to exhaut was attributable to grievance staff's procedural deviations", Ouelltte v. Maine State Prison, 2006 WL 173639(D.Me.Feb.23,2006). Therefore, because Jones presents a two-fold challenge to defendants non-exhaustion defense and where it can clearly be seen that the records support both of his contentious claims. This court should deny the defendants non-exhaution defense, specifically where they cannot show anywhere how they are allowed to go forward with a total disregard to Dc-Adm 804 policy and also use the same policy as a defense,"adding administrative remedies are unavailable even when the prisoner accepts a late prison response "in good faith and pursue[s] his claim through the remainder of a belated administrative process",Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016). Also:

"Under the PLRA, a prisoner must "exhaust . . . administrative remedies" before bringing suit in court for grievances related to their incarceration.7 Exhaustion entails "complet[ing] the administrative review process in accordance with the applicable procedural rules," which are provided by the individual prisons.8 However, "exhaustion applies only when administrative remedies are 'available,' and "[u]nder certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy."9 Whether a remedy is truly "available" is a functional inquiry based on "real-world workings of prison grievance systems."10 A remedy may be found to be "unavailable" if,{2022 U.S. App. LEXIS 5} among other things, the procedure results in officers being "unable or consistently unwilling to provide any relief to aggrieved inmates."11"

Saleem v. Brugart,2022 U.S. App. LEXIS 33018.

The above cases are premised on prison staff's detouring away from what is supposed to be away for prisoners to resovle their conflicts with confinement conditions in a expedient way. Which is what Jones has tried to do here, but for the prison staff's sabotaging tactics, mentioned foregoingly, he would have at least being able to complete one of the multiple internal administrative process'. Yet this is not what transpired he did however file reports through other channels -Dc-Adm 001 - and none of these avenues provided any remedies for him. Due to being blocked by prison staff, the defendants cannot now come with their calaims to the contrary and point the finger at Jones stating he was at fault for not completing grievance filings which he sought through many different ways to resolve, had received No help from prison administrators whatsoever.

***** JUDICIAL NOTICE *****

Jones now asks this court to take Judicial Notice of the records entered within the United States District Court for the Western District at case #2:19-CV-0397, ECF. 115 . Since this document has over 1000 pages the items in question can be viewed by this court at: Bates # JONES 000700 - 000900 , said documents will show the total records in reference to Jones' greivance filings. Furthermore, such filings as are being mentioned provides proof beyond all doubts that, but for prison staff unwillingness to issue him a reply Jones would have filed his appeal to final review completing the greivance process."Judicial proceedings constitute public records and that courts may take judicial notice of another court's opinions. A court may take judicial notice of another court's opinion to use it as proof that evidence exists to put a party on notice of the facts underlying a claim", Sand v. McCormick, 506 F.3d 263. Also, "Fed. R. Evid. 201(d) (providing that "[t]he court may take judicial notice at any stage of the proceeding", Johnson v. Feigley, 2024 U.S. Dist. LEXIS 41946; the records being what they are presents facts that on various occasions Jones sought and was denied the chance to appeal and whether defense counsel provides the relevant documents or not filings within another court have corresponding evidence that this court can take notice of and use as proof of:

- 1) Jones' efforts to complete the administratvie exhaustion process' ; and

- 2) that his efforts were thwarted by prison staff.


Therefore, pursuant to the relevant rules stated foregoingly a determination that the records already filed within another court are admitted and supply this court with sufficient proof that Jones did in fact try to resolve the administrative greivanvance process regarding greivances # 766222 - *inter alia* ."In evaluating a motion to dismiss, [the court] may consider documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.", CIPLA,USA.Inc. v. Ipsen Biopharmaceuticals,Inc. 2024 U.S. Dist LEXIS 14615 ; Buck v. Hampton Twp. School Dist., 452 F.3d 256, 260 (3d Cir. 2006) (international quotations omitted).

28) Additionally, district courts should permit a case to proceed in the absence of exhaustion of administrative remedies if it finds that "prison officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case[.]" Ross v. Blake, at 578.

Himmelreich v. Thompson, 2024 U.S. Dist. Lexis 37007

29) *Are Jones' eyewitness declarations proof prison staff never replied to his greivance appeal ?* There is also supporting evidence avialable from other prisoners that were being held at SCI-SMTH's B.M.U. at the same time as Jones, see EX-B, these attached exhibits prove Jones' version of exactly what took place related to his exhaustion of greivances # 766222, 771264, 771555, and 766223. With people who were housed on the same housing unit as Jones willing to testify, and the documents he has filed at DOC.# 96, there is more than enough proof before this court to establish that due diligence was exercised and but for prison staff'sfailure to respond the above mentioned greivances would have been exhausted. Where Jones attached his prior request to SCI-Frk's greivance coordinator -Newberry - on various dates the defendants are required to submit statements made by her regarding whether or not Jones fully exhausted his administrative remedies, accordingly:

*Respondent submits that Salamon did not fully exhaust his administrative remedies. (Kerr Decl. ¶ 5 and Attach 2, Dkt. No. 9-1 at 7-13.) Salamon argues that two different staff members denied his requests for the necessary administrative remedy form and prevented him from properly exhausting administrative remedies. (Pet., Dkt. No. 1 at 18, Petr's Mem., Dkt. No. 1-1 at 64-73.) Respondent acknowledges that the "failure to provide an inmate with requested grievance forms can . . . excuse an inmate's failure to exhaust administrative remedies." Ricketts, [Civ. No. 20-7430 (RBK)], 2023 U.S. Dist. LEXIS 62281, 2023 WL 2859743, at \*3 [D.N.J. Apr. 10, 2023] (citing Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Abraham v. Costello, 861 F. Supp. 2d 430, 435 (D. Del. 2012)). (Answer, Dkt. No. 9 at 16.) However, Respondent argues that Salamon's allegation is unsubstantiated.{2024 U.S. Dist. LEXIS 9}*

*Salamon signed his memorandum of law in support of his habeas petition under penalty of perjury. (Petr's Mem., Dkt. No. 1-1 at 79.) In support of his claim that he was deprived of the ability to exhaust BOP administrative remedies, Salamon states the following. On November 5, 2020, he requested a "BP-10" Administrative Remedy Appeal Form from Team Case Manager Bradley Vogt, who told him to get the form from his counselor, and then sent him away. (Id. at 67.) On November 6, 2020, he asked Unit Team Counselor Jose Cuevas, the only counselor present that day, for a BP-10 form. (Id.) Cuevas told Salamon to live with the DHO's decision and ordered him to leave. (Id. at 68.) The only way to obtain the necessary form to begin the administrative appeal of a DHO decision is to request it from staff. (Id. at 67, quoting 28 C.F.R. § 542.14(c) ("the inmate shall obtain the appropriate form from CCC staff or institutional staff"); [see also § 542.14(d)(2) ("DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.")].*

*Respondent did not submit affidavits from Vogt or Cuevas to contest Salamon's allegations. Therefore, the Court will waive the non-jurisdictional administrative{2024 U.S. Dist. LEXIS 10} exhaustion requirement.*

Salamon v. Knight, 2024 U.S. Dist. Lexis 38072

30) Jones' evidentiary materials, at DOC.# 96, in connection with the defendants failure to reveal specifically what SCI-Frk's greivance coordinator Newberry received from Jones the defendants are left without a leg to stand - on concerning an exhaustion defense.

## IN CONCLUSION

31) For the foregoing reasons the defendants cannot prevail on a non - exhaustion defense.

## PROOF OF SERVICE

I, Marcellus A."Jones", verify that true and correct copies of "Exhaustion Brief & Exhibits - A & B" were sent on: Nov.14,2024, to:

 Mrs. Tyler Jefferies, esq.

 Office of the Attorney General

 15th Floor, Strawberry Square

 Harrisburg PA 17120

BY FIRST CLASS MAIL  S, *[signature]*

PAGE 12 of 12

MARCELLUS JONES
#KR2421 SCI-HOUTZDALE
209 INSTITUTION DRIVE
HOUTZDALE PA 16698

RECEIVED WILLIAMSPORT NOV 21 2024 PER NR DEPUTY CLERK

MATTHEW BRANN, CHIEF JUDGE
c/o PETER WELSH CLERK OF COURT
UNITED STATES DISTRICT COURT, SUITE #218
240 W. THIRD STREET
WILLIAMSPORT PA 17701-6460