# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARCELLUS A. JONES,

        Plaintiff,

    v.

EIDEM, *et al.*,

        Defendants.

No. 4:18-CV-02353

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 31, 2025

*Pro se* Plaintiff Marcellus A. Jones ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Houtzdale ("SCI-Houtzdale") and was incarcerated in the State Correctional Institution-Frackville ("SCI-Frackville") during the relevant period, filed this case alleging civil rights violations by Defendants employed at SCI-Frackville.  Following my partial grant of summary judgment in favor of Defendants, the case proceeded solely with respect to Plaintiff's retaliation claim against five Defendants.  The case is presently before me to determine whether Defendants met their burden to establish the affirmative defense of failure to exhaust administrative remedies during a June 5, 2024 evidentiary hearing.

Based on the evidence adduced during the evidentiary hearing and the parties' subsequent briefing, I conclude that Plaintiff failed to exhaust

administrative remedies and that he has also failed to meet his burden to show that the grievance process was unavailable to him.  I will accordingly grant judgment in Defendants favor as to all remaining claims and close this case.

## I.    BACKGROUND

Plaintiff initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on December 7, 2018.[1]  Plaintiff additionally moved for leave to proceed *in forma pauperis*.[2]  United States Magistrate Judge Martin C. Carlson granted the motion for leave to proceed *in forma pauperis* on January 17, 2019.[3]

On May 15, 2019, I dismissed the claims against several Defendants without prejudice and granted Plaintiff leave to file an amended complaint.[4]  Plaintiff timely amended his complaint on August 22, 2019.[5]  The amended complaint asserted claims for excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and a host of other claims.[6]  Defendants answered the amended complaint on November 12, 2019, and pleaded several affirmative defenses, including failure to exhaust administrative remedies.[7]  They then moved for summary judgment on June 25, 2020.[8]

---

[1]    Doc. 1.
[2]    Doc. 3.
[3]    Doc. 9.
[4]    Doc. 19.
[5]    Doc. 22.
[6]    *Id.*
[7]    Doc. 31.
[8]    Doc. 61.

On July 1, 2020, Defendants moved for reconsideration of the Order granting Plaintiff's request for leave to proceed *in forma pauperis*, arguing that the Supreme Court's decision in *Lomax v. Ortiz-Marquez*,[9] constituted an intervening change in controlling law that prevented Plaintiff from proceeding *in forma pauperis* given that three previously dismissed cases that he had filed now qualified as strikes under 28 U.S.C. § 1915(g).[10]  I granted the motion for reconsideration on July 29, 2020, and revoked Plaintiff's leave to proceed *in forma pauperis*.[11]  Plaintiff moved for reconsideration, arguing that one of the three cases that the Court determined was a strike, *Jones v. Wetzel*,[12] should not qualify as a strike under § 1915(g).[13]  I denied the motion for reconsideration on December 29, 2020, dismissed Defendants' motion for summary judgment as moot, and directed the Clerk of Court to close the case.[14]  Plaintiff appealed.[15]

On appeal, the United States Court of Appeals for the Third Circuit determined that *Jones v. Wetzel* does not qualify as a strike because it was not explicitly dismissed for failure to state a claim upon which relief could be granted.[16]  The Court of Appeals accordingly vacated my Orders revoking

---

[9]   590 U.S __, 140 S. Ct. 1721 (2020).
[10]   Doc. 63.
[11]   Doc. 70.
[12]   No. 2:15-CV-00130 (E.D. Pa. filed Jan. 29, 2015).
[13]   Doc. 71.
[14]   Docs. 81-82.
[15]   Doc. 83.
[16]   Doc. 85.

Plaintiff's *in forma pauperis* status and denying Plaintiff's motion for reconsideration and remanded the case for further proceedings with instructions to grant Plaintiff's application for leave to proceed *in forma pauperis*.[17]

In accordance with the Third Circuit's instructions, I reopened the case, reinstated Plaintiff's *in forma pauperis* status, and granted Defendants leave to file a renewed motion for summary judgment.[18]  Defendants timely moved for summary judgment on January 31, 2022.[19]

I granted the motion for summary judgment in part and denied it in part on August 19, 2022, allowing the case to proceed solely as to: (1) Plaintiff's retaliation claim against Defendants Eidem, Palerino, McCord, Hoffner, and Shorts[20] arising from his April 4, 2018, conversation with various supervisory officials; and (2) Plaintiff's excessive force claim against Defendants Palerino and Hoffner arising from an alleged assault on October 2, 2018.[21]  During the summary judgment proceedings, Defendants attempted to advance an argument in their reply brief that they were entitled to summary judgment because Plaintiff failed to exhaust administrative remedies prior to filing his claims.[22]  I disregarded this

---

[17]  *Id.*
[18]  Doc. 86.
[19]  Doc. 90.
[20]  This defendant has been referred to by her first name as "Kathy" at various points in this case. Because her last name has now been provided and has been used by all parties, I will refer to her by her last name throughout the remainder of this opinion.
[21]  Docs. 101-02.
[22]  Doc. 98.

argument in my summary judgment opinion, noting that arguments could not be raised for the first time in a reply brief.[23]

Following my summary judgment ruling, I referred the case to mediation with the District's Prisoner Litigation Settlement Program on September 30, 2022.[24]  The mediator reported on December 20, 2022 that the parties had not reached a settlement through mediation.[25]

Following the resolution of several motions by Plaintiff as well as a brief stay of the case following my appointment of counsel for Plaintiff, I conducted a bifurcated evidentiary hearing on the issue of administrative exhaustion and bench trial on the merits on June 5, 2024.[26]  At the conclusion of the proceeding, I issued an Order directing the parties to file supplemental briefs addressing several issues on or before July 12, 2024.[27]

On June 12, 2024, Plaintiff filed a motion to waive counsel, a motion to alter or amend judgment, and a motion to stay briefing deadlines, wherein he generally (1) asserted that he never consented to a bench trial, (2) requested that I terminate his attorney-client relationship with his counsel, and (3) requested that a new trial be conducted before a jury.[28]  Following the filing of these motions, Plaintiff's

---

[23] Doc. 101.
[24] Doc. 107.
[25] Doc. 111.
[26] *See* Docs. 180-81.
[27] Doc. 179.
[28] Docs. 182-84.

counsel made several attempts to contact Plaintiff in an attempt to resolve

Plaintiff's complaints without Court intervention.[29]  To facilitate counsel's efforts,

I first extended and then stayed the deadline for supplemental briefing.[30]

Ultimately, however, Plaintiff's counsel moved to withdraw as counsel on

September 14, 2024, noting that Plaintiff had cut off all communication with

counsel and had otherwise made representation of him impossible.[31]  I granted

counsel's motion to withdraw as counsel on September 17, 2024.[32]

        In an attempt to resolve the case as expeditiously as possible, I issued an

Order on September 18, 2024, in which I acknowledged Plaintiff's ongoing

complaints that he had not consented to a bench trial, but noted that regardless of

the resolution of these issues Plaintiff did not have a right to a jury trial on the

issue of administrative exhaustion.[33]  Because it appeared from the record before

me that it might well be possible to resolve the case solely based on the issue of

exhaustion without having to resolve Plaintiff's complaints about the bench trial

occurring, I lifted the stay of the briefing deadline and directed the parties to file

supplemental briefs on or before October 18, 2024, limited to the issues of

---

[29]  *See generally* Docs. 185-87, 190, 192.
[30]  Docs. 189, 193.
[31]  Doc. 199.
[32]  Doc. 201.
[33]  Doc. 202 at 3.

administrative exhaustion.[34]  I subsequently granted Plaintiff's motion for extension of time and extended the briefing deadline to November 15, 2024.[35]

The parties timely filed their briefs in accordance with the November 15, 2024, deadline.[36]  Neither party responded to the other party's brief or requested leave to do so, but on December 9, 2024, Plaintiff filed a motion for extension of time and a related declaration, in which he requested that the Court allow him to file proposed findings of fact in connection with his brief on or before January 20, 2025.[37]  Plaintiff noted that he requested transcripts of the evidentiary hearing and bench trial from the Clerk of Court on July 22, 2024, but that he never received these documents.[38]  He requested additional time to file proposed findings of fact due to the fact that he did not have copies of the relevant transcripts.[39]

I granted the motion for extension of time on December 13, 2024, and extended the deadline for Plaintiff to file proposed findings of fact to January 20, 2025, but noted that no further extensions of this deadline would be granted and that the issue of administrative exhaustion would be considered ripe for judicial review on January 20, 2025.[40]  I explained that the clear instructions from the court reporter assigned to the evidentiary hearing required the parties to contact the court

---

[34]  *Id.* at 3-4.
[35]  Doc. 206.
[36]  Docs. 208-09.
[37]  Docs. 210-11.
[38]  *Id.*
[39]  *Id.*
[40]  Doc. 211.

reporter directly to obtain transcripts shortly after the hearing and that the transcripts could now be obtained through PACER.[41]  I noted that any complaints Plaintiff was making about his inability to understand the court reporter's instructions or to litigate the case on his own behalf were part of the risk he assumed when he terminated his attorney-client relationship with his court-appointed counsel.[42]  Plaintiff timely filed his proposed findings of fact and conclusions of law on December 20, 2024, making the issue of administrative exhaustion ripe for my review.[43]

After providing the relevant standard of review, I will summarize the testimony and evidence adduced during the June 5, 2024 evidentiary hearing.  I will then analyze the arguments advanced by the parties in their supplemental briefs.  Finally, I will provide my findings of fact and conclusions of law on the issue of administrative exhaustion.

## II.    STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.[44]  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in

---

[41]  *Id.*
[42]  *Id.*
[43]  Doc. 212.
[44]  42 U.S.C. § 1997e(a).

accordance with the procedural rules of the prison in which they are incarcerated.[45]
Failure to exhaust administrative remedies is an affirmative defense that
defendants must plead and prove; it is not a pleading requirement for plaintiffs.[46]

A prisoner is only required to exhaust administrative remedies that are
"available."[47]  An administrative remedy is unavailable, and administrative
exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple
dead end—with officers unable or consistently unwilling to provide any relief to
aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking,
incapable of use,' such as when no ordinary prisoner can discern or navigate it; or
(3) when 'prison administrators thwart inmates from taking advantage of a
grievance process through machination, misrepresentation, or intimidation.'"[48]  If a
defendant establishes that the plaintiff failed to exhaust administrative remedies,
the burden shifts to the plaintiff to show that the administrative process was
unavailable to him.[49]

Exhaustion of administrative remedies in the DOC is governed by the three-
step process outlined in the DOC's grievance policy, DC-ADM 804.[50]  Under DC-

---

[45]  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

[46]  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[47]  *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Woodford*, 548 U.S. at 93).

[48]  *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).

[49]  *Id.* at 268.

[50]  Ex. D-17.  DC-ADM was admitted into the evidentiary record of this case as Defendants' Exhibit 17 during the June 5, 2024, evidentiary hearing.  I am citing it here prior to

ADM 804, a prisoner must first submit a written grievance within 15 working days from the date of the incident.[51]  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."[52]  Once a grievance has been filed, the prison must respond to the grievance within 15 working days.[53]  Next, the prisoner must submit a written appeal to the facility manager within 15 working days.[54]  Upon receiving the grievance, the facility manager must respond to the appeal within 15 working days.[55]  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days.[56]  SOIGA must respond to the final appeal within 30 working days.[57]

## III.   EVIDENTIARY HEARING TESTIMONY AND EXHIBITS

During the June 5, 2024 evidentiary hearing, the Court heard testimony from five witnesses: Beth Lazusky, a corrections superintendent's assistant at SCI-Frackville who served as the superintendent's secretary during the period relevant

---

summarizing the evidence adduced during the hearing to aid the reader's understanding of the legal standard governing the Court's analysis.

[51]  *Id.* § 1(A)(8).
[52]  *Id.* § 1(A)(11).
[53]  *Id.* § 1(C)(5)(g).
[54]  *Id.* § 2(A)(1)(a).
[55]  *Id.* § 2(A)(2)(d)(1).
[56]  *Id.* § 2(B)(1)(b).
[57]  *Id.* § 2(B)(2)(a)(1).

to this case; Amanda West, a grievance review officer with the DOC's Secretary's

Office of Inmate Grievances and Appeals ("SOIGA"); Plaintiff Marcellus A.

Jones; and two of the remaining Defendants, Brandon Hoffner and Larry Eidem.[58]

Lazusky testified as to the general practices and procedures that govern the

filing of grievances under the DOC's grievance policy, DC-ADM 804.[59] She

testified that in her role with the DOC, she has the authority to generate reports on

an inmate's grievance activity.[60] Based on her testimony, the Commonwealth

introduced into the record a report of Plaintiff's grievance activity during the

relevant period.[61] Following some testimony from Lazusky as to the general

nature of the report and how grievances are categorized by the DOC, the parties

stipulated to the admission of Defendants' exhibits 2 through 16, which contain all

the grievances filed during the relevant period.[62] Following the admission of these

exhibits, Lazusky testified as to the content of the grievances and whether they

pertained to the claims at issue in this case.[63] Lazusky was then subject to cross-

---

[58] *See* Doc. 181. Additional witnesses were called during the bench trial portion of the proceeding, but because I have limited the instant analysis and related briefing to the issue of administrative exhaustion, I will limit my summary of the relevant testimony to that which was provided during the evidentiary hearing portion of the proceeding.

[59] *Id.* at 11-16.

[60] *Id.* at 16.

[61] *Id.* at 17; Ex. D-1.

[62] Doc. 181 at 22-24; Exs. D-1–D-16.

[63] Doc. 181 at 24-34.

examination, re-direct examination, re-cross examination, and re-direct
examination, which focused on general grievance procedures.[64]

West's testimony began with Defendants introducing a copy of DC-ADM
804 as Exhibit D-17, which was admitted into the record.[65]  West testified as to the
general procedure for appealing grievances under DC-ADM 804.[66]  West then
reviewed Plaintiff's grievance history during the relevant period and testified that
he filed 13 grievances between April and October of 2018, only one of which,
grievance number 750280, was appealed through final review by SOIGA.[67]
Defendants then admitted into the evidentiary record as Exhibit D-18 the complete
appeal record for grievance number 750280.[68]  West reviewed grievance number
750280 and testified that it pertained to the alleged denial of a shower.[69]

Plaintiff testified that he was threatened at various times by staff at SCI-
Frackville between April and October 2018.[70]  According to Plaintiff, Defendant
Hoffner told him that he would have his "ass kicked" if he did not stop
complaining and submitting reports against him and other staff members.[71]
Plaintiff testified that Defendant Eidem similarly threatened him with violence if

---

[64]  *See id.* at 34-49.
[65]  *Id.* at 51.  Ex. D-17.
[66]  Doc. 181 at 52-53.
[67]  *Id.* at 53-54.
[68]  *Id.* at 55.
[69]  *Id.*
[70]  *Id.* at 62.
[71]  *Id.*

he filed grievances.[72]  Plaintiff also testified that another inmate came to his cell on

April 20, 2018, kicked and banged on the door, and told Plaintiff that he was going

to "F [him] up" if he did not stop filing reports and grievances.[73]  Plaintiff testified

that during this same period, unspecified officers called him a snitch and denied

him food and other privileges.[74]  Plaintiff also testified that he was assaulted on

multiple occasions and that the assaults and retaliation contributed to his inability

to fully litigate his grievances.[75]  Plaintiff acknowledged that he did not appeal any

of the grievances relevant to his claims through all stages of administrative

review.[76]

On cross-examination, Plaintiff acknowledged that during the period when

he said Defendants Hoffner and Eidem were threatening him with violence, he

continued to file grievances and other complaints against them and continued to

appeal the grievances through further stages of administrative review.[77]  Plaintiff

also testified that he was transferred from SCI-Frackville to SCI-Smithfield in

October 2018, but that he did not attempt to file grievances against Hoffner and

---

[72]  *Id.*
[73]  *Id.* at 62-63.
[74]  *Id.* at 63.
[75]  *Id.* at 65.
[76]  *Id.* at 67.
[77]  *Id.* at 70-72.

Eidem following his transfer.[78]  Defendants Hoffner and Eidem testified that they never threatened Jones during the relevant period.[79]

## IV.    ANALYSIS

Defendants' supplemental brief argues that: (1) Defendants properly preserved the affirmative defense of failure to exhaust administrative remedies by raising it in their answer to the amended complaint; (2) that Plaintiff failed to exhaust administrative remedies; and (3) that Plaintiff has failed to establish that the grievance process was unavailable to him.[80]

Plaintiff's supplemental brief argues that: (1) Defendants waived the affirmative defense of failure to exhaust administrative remedies by failing to raise it until after summary judgment proceedings; (2) the grievance process was unavailable to him with respect to grievance number 766222 because the grievance officer who initially responded to the grievance, officer Gregoire, was named in the grievance; and (3) the grievance process was unavailable to him with respect to grievance number 766222 because prison officials did not respond to written communications related to the grievance.[81]

Although Plaintiff's former counsel argued during his opening statement in the evidentiary hearing that the grievance process was rendered unavailable due to

---

[78]  *Id.* at 72-73.
[79]  *Id.* at 77-80.
[80]  Doc. 208.
[81]  Doc. 209.

threats of violence by Defendants Hoffner and Eidem, Plaintiff appears to have abandoned this argument in his pro se supplemental brief.[82]  Plaintiff notes that his arguments in his supplemental brief "are in stark contrast to the NO evidence supported offerings presented before this court by [counsel], which said misrepresentations from [counsel] were based on 'hot air' since Jones' grievance filings neutralizes a claim that fear of retaliation caused Jones to not file an appeal."[83]  Jones states that he "never wished to pursue a claim that relied on 'fear of retaliation'" and is now trying to "set the record straight" with his current arguments.[84]  Plaintiff appears to have abandoned the argument that the grievance process was rendered unavailable by threats of violence.

With the parties' arguments appropriately teed up, I now address the three separate issues of waiver, exhaustion, and unavailability *seriatim*.

## A.    Waiver

I will first consider Plaintiff's contention that Defendants have waived the affirmative defense of failure to exhaust administrative remedies.  I find this argument meritless.

There is no "strict timing requirement" for Defendants to raise the affirmative defense of failure to exhaust administrative remedies.[85]  A defendant is

---

[82]  *See id.* at 7.
[83]  *Id.*
[84]  *Id.* at 8.
[85]  *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

not required to advance the affirmative defense before or during summary judgment proceedings.[86]  Although a failure to timely pursue the affirmative defense of failure to exhaust administrative remedies during summary judgment proceedings "may bar summary judgment consideration of this claim, . . .  if the failure to exhaust defense is raised in the defendants' answer, the defendants may nonetheless pursue this affirmative defense notwithstanding their failure to raise it in a timely fashion at summary judgment, by seeking a bifurcated non-jury trial and adjudication of this issue."[87]

In this case, Defendants pleaded the affirmative defense of failure to exhaust administrative remedies in their answer to Plaintiff's complaint.[88]  Although I concluded during summary judgment proceedings that I could not grant summary judgment to Defendants on this issue because they raised it only in their reply brief and not their original summary judgment brief,[89] this did not prevent Defendants from subsequently pressing the affirmative defense by requesting an evidentiary hearing to determine whether Plaintiff exhausted administrative remedies.[90]  This is the exact procedure Defendants followed; they therefore have not waived the affirmative defense of failure to exhaust administrative remedies.

---

[86]   *See id.* at 782 (rejecting argument advanced by plaintiff that defense of failure to exhaust is waived if it is not prosecuted by the dispositive motions deadline).

[87]   *Moore v. Mann*, No. 3:13-CV-2771, 2022 WL 135807, at *4 (M.D. Pa. Jan. 13, 2022) (citing *Drippe v. Gototweski*, 434 F. App'x 79, 81 (3d Cir. 2011).

[88]   Doc. 31 at 7.

[89]   *See* Doc. 101 at 37.

[90]   *See Drippe*, 604 F.3d at 781; *Moore*, 2022 WL 135807, at *4.

## B.    Exhaustion

My analysis of whether Plaintiff exhausted administrative remedies is similarly straightforward: he did not.  Defendants proffered exhibits and testimony during the evidentiary hearing showing that Plaintiff only appealed one grievance through final review by SOIGA and that this grievance did not concern the claims at issue in this case.[91]  Plaintiff agreed during his testimony that he did not appeal the relevant grievances to final review by SOIGA.[92]

## C.    Unavailability

Finally, having concluded that Plaintiff failed to exhaust administrative remedies, I analyze his arguments that the grievance process was unavailable to him.  At the outset, I will disregard the argument pressed by counsel during the evidentiary hearing that threats by Defendants Hoffner and Eidem rendered the grievance process unavailable because Plaintiff waived this argument in his brief.[93]

---

[91]    *See* Doc. 181; Exs. D-1–D-17.
[92]    Doc. 181 at 67.
[93]    *See* Doc. 209 at 7-8.  Even if this argument were not waived, it would fail on its merits.  A plaintiff alleging that threats by prison officials rendered a grievance process unavailable "must show both 'that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance' and 'that the threat actually did deter this particular inmate.'"  *Hardy v. Shaikh*, 959 F.3d 578, 587 (3d Cir. 2020) (quoting *Rinaldi*, 904 F.3d at 269).  The Plaintiff in the instant case testified that during the period when the Defendants were threatening him, he continued to filed grievances and other complaints against them and continued to appeal those grievances through further stages of administrative review. (Doc. 181 at 70-72).  As Plaintiff correctly notes in arguing against his former lawyer's argument, (*see* Doc. 209 at 7), these continued grievances and appeals against the staff members who were purportedly threatening him completely undermine his argument and show that the threats did not actually deter him from filing grievances and appeals.  *See Hardy*, 959 F.3d at 587.

Accordingly, I limit my analysis to Plaintiff's arguments that the grievance process was unavailable with respect to grievance number 766222 because the responding grievance officer was named in the grievance and because prison officials did not respond when he attempted to appeal the grievance.

Plaintiff's first contention is that the grievance process was rendered unavailable to him because he named Gregoire in grievance number 766222 and Gregoire subsequently responded to the grievance as the assigned grievance officer.[94]  Plaintiff argues that this violated Section 1.C.3 of DC-ADM 804, which states that "[t]he staff member who serves as the Grievance Officer shall not be directly involved *in* or named as the subject of the grievance."[95]  According to Plaintiff, "Once the SCI-Frak grievance coordinator assigned Gregoire as the responding grievance officer this grievance was effectively voided . . . and rendered administrative remedies unavailable to Jones."[96]  Plaintiff notes that he "did not know how to proceed" because DC-ADM 804 "does not have instructions explaining what to do when the wrong officer . . . responds to a grievance."[97]  Plaintiff also argues that prison officials' failure to adhere to the terms of DC-ADM 804 was a "due process violation."[98]

---

[94]  Doc. 209 at 2.
[95]  Ex. D-17 § 1.C.3 (emphasis in original).
[96]  Doc. 209 at 2.
[97]  *Id.*
[98]  *Id.* at 1.

I am unpersuaded by Plaintiff's argument.  Assuming for the sake of discussion that Gregoire responding to Plaintiff's grievance violated DC-ADM 804 because Gregoire is named in the grievance, this does not establish that the grievance process was *per se* unavailable to Plaintiff: Plaintiff maintained the right to appeal Gregoire's decision to higher authorities in the DOC's grievance system. If successful on appeal, Plaintiff could have obtained relief outright or the grievance could have been remanded with instructions for a different officer who was not named in the grievance to respond to the grievance.

Furthermore, Plaintiff is correct that DC-ADM 804 does not provide clear instructions for how a prisoner should respond when an officer who is named in a grievance responds to the grievance, but "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."[99]  Here, in the absence of clear instructions in the policy, it is reasonable to conclude that an inmate whose grievance is answered by an officer named in the grievance should raise this issue on appeal to the facility manager and SOIGA, and the record is clear that Plaintiff did not appeal grievance number 766222 through final review by SOIGA.

To the extent Plaintiff is attempting to argue that Gregoire responding to the grievance constitutes a freestanding violation of Plaintiff's due process rights, this

---

[99]  *Ross*, 578 U.S. at 644.

argument is without merit.  Prison inmates do not have a constitutional right to a grievance process.[100]

Plaintiff's argument that the grievance process was rendered unavailable by prison officials failing to respond to grievance number 766222 is similarly unavailing.  The exhibits admitted into the evidentiary record during the June 5, 2024 hearing show that officials did, in fact, reply to grievance number 766222 and Plaintiff's other communications associated with the grievance.[101]  Plaintiff asserts that exhibits he attached to his brief that he did not introduce into the evidentiary record during the June 5, 2024 hearing, unspecified evidence provided during the summary judgment record at Docs. 96-104 on this Court's electronic docket, and evidence on the docket of another case Plaintiff has filed in a different district show that Defendants have provided an incomplete record related to grievance number 766222 and that officials actually failed to respond to some of Plaintiff's communications.[102]  But it is Plaintiff's burden to establish that the grievance process was unavailable to him,[103] and he failed to introduce any of this evidence into the record before the Court.  The evidence that has been properly submitted to the Court and admitted into the evidentiary record establishes that prison officials

---

[100]  *See, e.g.*, *Davis v. Samuels*, 608 F. App'x 46, 49 (3d Cir. 2015); *Iwanicki v. Pa. Dep't of Corrs.*, 582 F. App'x 75, 81 (3d Cir. 2014); *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010).
[101]  Ex. D-13.
[102]  Doc. 209 at 3.
[103]  *Rinaldi*, 904 F.3d at 268,

responded to grievance number 766222 and does not support Plaintiff's unavailability argument.[104]

## V.    FINDINGS OF FACT

Based on my review of the evidentiary record developed during the June 5, 2024 evidentiary hearing, I make the following findings of fact:

1.    Plaintiff was incarcerated at Frackville State Correctional Institution at all relevant times.[105]

2.    Plaintiff's remaining claims allege excessive force in violation of the Eighth Amendment by Defendants Palerino and Hoffner and retaliation in violation of the First Amendment by Defendants Eidem, Palerino, McCord, Hoffner, and Shorts.[106]

3.    To successfully complete the DOC's grievance process, DC-ADM 804, a prisoner must file a grievance and appeal it to the facility manager and SOIGA.[107]

---

[104]  I have additionally reviewed the documents cited by Plaintiff in an effort to liberally construe his filings as a pro se litigant.  I cannot discern from the cited documents how they prove Plaintiff's unavailability argument, and it is not this Court's job to make an argument for Plaintiff that he has failed to make himself or to find evidence that supports his arguments. "'Judges are not like pigs, hunting for truffles buried in' the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[105]  Doc. 181 at 61.

[106]  Docs. 22, 101-02.

[107]  Ex. D-17.

4.    Between April and October of 2018, Plaintiff filed thirteen grievances, only one of which, grievance number 750280, was appealed through final review by SOIGA.[108]

5.    Grievance number 750280 alleged that Plaintiff was denied a shower and did not allege excessive force by Palerino or Hoffner or retaliation by Eidem, Palerino, McCord, Hoffner, or Shorts.[109]

6.    Plaintiff did not appeal any grievances alleging excessive force by Palerino or Hoffner or retaliation by Eidem, Palerino, McCord, Hoffner, or Shorts through final review by SOIGA.[110]

7.    Grievance number 766222 alleged that Plaintiff was assaulted by Palerino and Hoffner.[111]

8.    Gregoire, who was also named in grievance number 766222, responded to the grievance as a grievance officer.[112]

9.    Plaintiff did not appeal grievance number 766222 through final review by SOIGA.[113]

10.   Prison officials responded to grievance number 766222 and Plaintiff's associated communications.[114]

---

[108] *Id.* at 53-54.
[109] Ex. D-18.
[110] Doc. 181 at 67.
[111] Ex. D-13.
[112] *Id.*
[113] *Id.*; Doc. 181 at 53-54, 67.
[114] Doc. D-13.

## VI.    CONCLUSIONS OF LAW

Based on the above findings of fact and legal analysis, I have reached the following conclusions of law:

1.    Defendants did not waive the affirmative defense of failure to exhaust administrative remedies.

2.    Plaintiff failed to exhaust administrative remedies.

3.    Plaintiff waived the argument that the grievance process was rendered unavailable to him by threats from prison officials.

4.    Plaintiff has failed to meet his burden to show that the grievance process was unavailable to him.

5.    Judgment in favor of Defendants will be entered as to all remaining claims for Plaintiff's failure to exhaust administrative remedies.[115]

---

[115] Having reached this conclusion, the Court will deny as moot Plaintiff's June 12, 2024, motion, which seeks reconsideration of the Court's order scheduling the case for a bench trial rather than a jury trial. (Doc. 183). Because the case has been resolved on the basis of failure to exhaust administrative remedies, I do not need to address the issues Plaintiff has raised regarding the bench trial in this matter.

## VII.  CONCLUSION

For the foregoing reasons, I will grant judgment in favor of Defendants as to all remaining claims for Plaintiff's failure to exhaust administrative remedies and close this case.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge