IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCELLUS A. JONES, | No. 4:18-CV-02353 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| EIDEM, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

SEPTEMBER 5, 2025

This is a prisoner civil rights in which I granted judgment to Defendants for Plaintiff's failure to exhaust administrative remedies. Plaintiff has filed a motion to alter or amend the judgment. I will deny the motion.[1]

I. BACKGROUND

*Pro se* Plaintiff Marcellus A. Jones initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on December 7, 2018.[2] On August

---

[1] Under Standing Order 2025-05, this case is stayed until September 22, 2025, due to a cyber attack effecting the Pennsylvania Office of Attorney General. *See In re Pennsylvania Attorney General's Office Cyberattack*, No. 2025-05 (M.D. Pa. Aug. 21, 2025) (Brann, C.J.). However, per the terms of the order, I find that "extenuating circumstances" warrant lifting the stay in this case because I have previously granted judgment in Defendants' favor and am ultimately denying Plaintiff's motion to alter or amend the judgment. Thus, any deadline to appeal my judgment would likely affect Plaintiff rather than the Attorney General's Office and does not create any added burden for the Attorney General's office as they deal with the cyberattack.

[2] Doc. 1. This section provides only the procedural history necessary to understand Plaintiff's current motion to alter or amend judgment. For a more complete procedural history, see my January 31, 2025, Opinion. *See* Doc. 213.

19, 2022, I granted in part and denied in part Defendants' motion for summary judgment, allowing the case to proceed as to: (1) a retaliation claim against Defendants Eidem, Palerino, McCord, Hoffner, and Shorts; and (2) an excessive force claim against Palerino and Hoffner.[3]

I conducted a bifurcated proceeding on June 5, 2024, which included both an evidentiary hearing on the affirmative defense of failure to exhaust administrative remedies and a bench trial. Following the hearing, Plaintiff filed a series of motions regarding his counsel's representation of him during and before the evidentiary hearing, which culminated in me granting counsel's motion to withdraw from the case and directing Plaintiff to proceed pro se.

To resolve the case as expeditiously as possible, I directed the parties to file supplemental briefs limited to the issues of exhaustion.[4] After receiving the supplemental briefs, I granted judgment to Defendants on January 31, 2025, concluding that Plaintiff failed to exhaust administrative remedies.[5] I first considered Plaintiff's argument that Defendants waived the affirmative defense of failure to exhaust by failing to press the argument in their summary judgment briefing.[6] I found this argument meritless because Defendants raised the defense in their responsive pleading and were not required to advance the argument at the

---

[3] Docs. 101-02.
[4] *Id.* at 3-4.
[5] Docs. 213-15.
[6] Doc. 213 at 15-16.

summary judgment stage to preserve it.[7]  I then concluded that the evidence adduced during the hearing established that Plaintiff failed to exhaust administrative remedies.[8]  Finally, I addressed Plaintiff's arguments that the grievance process was unavailable to him because (1) the grievance officer who responded to the grievance was named in the grievance and (2) prison officials failed to respond to the relevant grievance.[9]

With respect to the first unavailability argument, I assumed, *arguendo*, that prison officials had violated the relevant grievance policy by assigning a grievance officer to respond to it who was named in the grievance, but found that even if this were true "it does not establish that the grievance process was *per se* unavailable to Plaintiff" because he "maintained the right" to appeal the denial of the grievance to higher prison authorities.[10]  I additionally noted that the relevant policy was ambiguous on what steps a prisoner should take when an officer named in a grievance responds to the grievance, and noted that in such a situation, a prisoner should "err on the side of exhaustion."[11]

As for the second unavailability argument, I found that Plaintiff failed to establish unavailability because the evidence established that prison officials did

---

[7]  *Id.*
[8]  *Id.* at 17.
[9]  *Id.* at 17-20.
[10] *Id.* at 19.
[11] *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 644 (2016)).

respond to Plaintiff's grievance, and the exhibits he relied on to prove the contrary had not been introduced during the hearing.[12] I accordingly concluded that Plaintiff failed to exhaust administrative remedies and granted judgment for Defendants. Plaintiff has filed a motion to alter or amend the judgment.[13] Briefing on the motion is complete and it is ripe for my review.[14]

## II.   STANDARD OF REVIEW

To properly support a motion to alter or amend a judgment, often referred to as a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[15]  In reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[16]  Thus, to warrant reconsideration, the moving party "must show more than mere disagreement with the earlier ruling" and must show that the court "committed a direct, obvious, or observable error, and one that is of at least some importance to the larger proceedings."[17]

---

12   *Id.* at 20-21.
13   Doc. 216.
14   *See* Docs. 221, 224, 229.
15   *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (cleaned up).
16   *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (cleaned up).
17   *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (cleaned up).

Motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of."[18] "Reconsideration means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision."[19]

## III. ANALYSIS

Plaintiff advances six arguments to alter or amend my judgment: (1) that I erred by dismissing the claims against Defendants Wenerowicz, Brittain, Albert, Hammond, White, Sorber, and O'Kane; (2) that the court erred by permitting Beth Lazusky to testify as to the contents of Plaintiff's grievances and associated appeals; (3) that ineffective assistance by Plaintiff's counsel provides a basis to invalidate the judgment; (4) that I erred in my conclusion regarding the availability of the grievance process; (5) that I erred in dismissing Plaintiff's state law claims; and (6) that I erred in denying Plaintiff's motion to compel discovery.

At the outset, Plaintiff's arguments regarding the dismissal of certain claims and discovery are not an appropriate basis to alter or amend the judgment. These arguments seek reconsideration of decisions I made on August 19, 2022, and October 19, 2023.[20] He could have advanced these arguments through earlier motions for reconsideration, which needed to be filed within 14 days of the

---

[18] *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at *1 (M.D. Pa. May 17, 2011)).
[19] *Banister v. Davis*, 590 U.S. 504, 516 (2020) (cleaned up).
[20] *See* Docs. 102, 141.

relevant orders.[21] Because the arguments could have been raised before the judgment that Plaintiff currently challenges, they are not properly raised in the instant motion.[22]

Turning to the other arguments, Plaintiff first objects to the testimony of Beth Lazusky regarding his grievances and associated appeals. Plaintiff asserts that Lazusky should not have been allowed to testify as to the contents of the grievances and appeals because another individual, Newberry, was responsible for handling and processing the grievances and appeals at the time they were filed.[23] Plaintiff argues that without testimony from Newberry "the chain of custody" regarding his grievances and appeals "is extremely questionable," and speculates that evidence that was not introduced during the evidentiary hearing might show that Plaintiff was not provided relevant replies to his grievances and appeals.[24]

This argument is frivolous. Any objections Plaintiff had to Lazusky testifying or evidence regarding the chain of custody of his grievances and appeals

---

[21] *See* M.D. Pa. L.R. 7.10.
[22] *See Banister*, 590 U.S. at 516 ("Courts will not entertain arguments that could have been but were not raised before the just-issued decision."). Plaintiff moved for reconsideration of my Order denying his motion to compel discovery on November 6, 2023. (*See* Doc. 143). I deemed the motion withdrawn for failure to file a supporting brief on November 22, 2023. (Doc. 149). Plaintiff then filed another motion for reconsideration of that Order on December 14, 2023. (Doc. 152). When counsel subsequently entered an appearance on Plaintiff's behalf, however, counsel requested that I deem the motion withdrawn. (Doc. 159). I granted that request and withdrew the motion the same day. (Doc. 160).
[23] Doc. 221 at 3-4.
[24] *Id.* at 4.

6

needed to be advanced during the evidentiary hearing. I will not reconsider the judgment based on Plaintiff's unsupported speculation.

Plaintiff's ineffective assistance of counsel argument is similarly frivolous. Ineffective assistance of counsel is not a ground for relief in civil cases.[25] The process to assert deficient counsel in a civil case is to file suit for malpractice, not to argue ineffective assistance of counsel.[26]

Plaintiff next argues that I erred in my conclusions regarding the availability of the grievance process. Specifically, Plaintiff argues that by stating that a prison official responding to his grievance did "not establish that the grievance process was *per se* unavailable to Plaintiff" I created a higher burden for prisoners to establish unavailability of administrative remedies than what is required by relevant Supreme Court precedent.[27] Plaintiff further argues that under *Shifflett v. Korszniak*,[28] I should have concluded that someone named in the grievance responding to the grievance rendered the process unavailable because it showed that prison officials were not following their own grievance rules.[29]

---

[25] *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 407-08 (3d Cir. 1980).
[26] *Id.* at 408. I note this law only to indicate why Plaintiff's argument for reconsideration fails. I do not suggest in any way that an action for malpractice against Plaintiff's former counsel would be successful. I reiterate my earlier statements that counsel provided very diligent and zealous advocacy of Plaintiff in this case, which continued even after Plaintiff stopped communicating with counsel and appeared to actively work against counsel's efforts to represent him. I thank counsel for his efforts in this case.
[27] Doc. 221 at 8-13.
[28] 934 F.3d 356 (3d Cir. 2019).
[29] Doc. 221 at 8-13.

Plaintiff apparently does not understand my statement that the grievance process was not *per se* unavailable. I was not suggesting that prisoner plaintiffs must establish that a grievance process is "*per se* unavailable" to establish unavailability. Rather, I noted that a prison official who is named in a grievance responding to the grievance does not render the grievance process *per se* unavailable because Plaintiff did not introduce any evidence to show that the officer responding to the grievance in this case rendered the grievance process unavailable under *Ross*.[30] Thus, because there was no supporting evidence offered, Plaintiff's argument amounted to stating that a grievance officer responding to a grievance when he is named in a grievance automatically—or, in other words, *per se*[31]—renders the grievance process unavailable. Because this conclusion was not supported by case law or the relevant grievance procedure, his unavailability argument failed, and his current argument for reconsideration also fails.

I next consider Plaintiff's argument based on *Shifflett v. Korszniak*. In *Shifflett*, the defendants argued that the plaintiff failed to exhaust administrative remedies, and the plaintiff argued that the grievance process was rendered unavailable when prison officials failed to timely respond to his grievance.[32] The Third Circuit agreed with the plaintiff, noting that because the Prison Litigation

---

[30] 578 U.S. at 643-44.
[31] *See Per Se*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "per se" as "[o]f, in, or by itself; standing alone, without reference to additional facts").
[32] *Shifflett*, 934 F.3d at 365.

8

Reform Act requires prisoners to comply with a prison's grievance procedure, it similarly requires prison officials to comply with the procedure, and therefore holding that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."[33]  The court summed up its analysis by stating:

> What is good for the goose is good for the gander. The PLRA requires strict compliance by prisoners seeking redress of their grievances, and by the same token we hold that it requires strict compliance by prison officials with their own policies. Whenever a prison fails to abide by those procedural rules, its administrative remedies have become unavailable, and inmates are deemed to have successfully exhausted their remedies for purposes of the PLRA.[34]

Plaintiff argues that under *Shifflett*, the prison assigning a grievance officer to respond to his grievance who was himself named in the grievance renders the grievance process unavailable because it violates the relevant grievance policy, DC-ADM 804.[35]

Plaintiff is correct that under Section 1.C.3 of DC-ADM 804, "[t]he staff member who serves as the Grievance Officer shall not be directly involved *in* or named as the subject of the grievance."[36]  I am not persuaded by his argument,

---

[33] *Id.*
[34] *Id.* at 367.
[35] Doc. 221 at 8-13.
[36] DC-ADM 804, Ex. D-17 § 1.C.3 (emphasis in original).

9

however, that a violation of this rule automatically renders the grievance process unavailable under *Shifflett*.

*Shifflett* considered one specific violation of a grievance policy by prison officials: the failure to timely respond to an inmate's grievance.[37] Although the court summed up its conclusion by noting that prison officials must comply with their "own policies" and that a failure to follow "those procedural rules" renders a grievance process unavailable, this appears to me to be a rhetorical flourish to explain the logic of its holding that a failure to timely respond to a grievance renders the grievance process unavailable. It does not appear that the *Shifflett* court intended to hold that *any* failure to comply with grievance procedures by prison officials—no matter how trivial or small the violation—renders the entire process unavailable. Language of a judicial opinion should not be parsed like the language of a statute.[38] Rather, the opinion should be read "in the light of the facts of the case under discussion."[39] "General expressions" in an opinion that are "transposed to other facts are often misleading."[40] "Judicial opinions are not statutes, from which we squeeze all we can out of every last word. Rather, we try

---

[37] *See Shifflett*, 934 F.3d at 365.
[38] *Reiter v. Sonotone*, 442 U.S. 330, 341 (1979).
[39] *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).
[40] *Id.*

10

to understand the Court's language against the backdrop of the particular controversy that the Court was resolving."[41]

I do not read *Shifflett* as holding that any violation of grievance procedures by prison officials renders the entire grievance process unavailable and excuses exhaustion; such a broad reading of *Shifflett* would encourage prison inmates to comb through every response from prison officials looking for an extremely minor or mundane error in applying grievance policies and to immediately run to federal court as soon as they found one.  This would go against the public policies that animate the PLRA's exhaustion requirement.[42]  Thus, I am unpersuaded by Plaintiff's argument that *Shifflett* requires reconsideration of my prior ruling.

Finally, Plaintiff challenges my conclusion that exhibits at the evidentiary hearing established that prison officials responded to his grievance.[43]  He notes that the exhibits produced during the evidentiary hearing do not show that he actually received copies of the relevant responses.[44]  As I noted in previously denying this argument, however, Plaintiff did not introduce any evidence to establish that he did not receive a response during the evidentiary hearing,[45] and the only evidence he

---

[41] *In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*, 974 F.3d 228, 235 (3d Cir. 2020).
[42] *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1991e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").
[43] Doc. 221 at 14.
[44] *Id.*
[45] *See* Doc. 213 at 20-21.

cites in his motion to alter or amend judgment is the record of the relevant grievance, which shows that prison officials responded to the grievance.[46]  His unsupported speculation is not sufficient to reconsider my previous ruling.

## IV.   CONCLUSION

For the foregoing reasons, I will deny Plaintiffs' motion to alter or amend judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[46]  *See* Ex. D-13.